ALBERT E. PROULX ET AL *v*. DAVID S. PARROW ET AL.

(56 A2d 623)

May Term, 1947.

Reargued at Special Term, Rutland, November, 1947.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 6, 1948.

*Leary & Leddy* for the defendants.

*McNamara & Larrow* for the plaintiffs.

234

Moulton, C. J. The parties are adjoining landowners and derive their respective titles from a common grantor. This proceeding is a petition for a declaratory judgment to determine the dividing line between their properties. An issue of fact was submitted to a jury and a special verdict placed the line in accordance with the plaintiff's contention. Judgment was entered in accordance therewith, and the defendants have brought the cause to this Court on exceptions. The controversy has been here before in a different proceeding, when the present defendants were plaintiffs. See *Parrow et ux.* v. *Proulx,* 111 Vt 274, 15 A2d 835.

The two parcels of land owned by the opposing parties were originally one lot of about four acres, the property of Josephine Pagel and Marie L. Levesque who derived their title from Robert B. Miller and Anna D. Miller, by deed dated August 31, 1922. On April 8, 1929, these two deeded to Helen F. Chausse and Maurice H. Chausse, her brother-in-law, the portion of the tract now belonging to the plaintiffs, and described as follows: "Being the land and premises consisting of about two acres, together with all rights and title in land occupied by the Standard Oil Co. under contract. Said land and cottage are situated on the westerly side of Mallets Bay Road, so-called, leading from Burlington, Vermont, to Mallets Bay, said land has a frontage on the westerly side of Mallets Bay Road of 204 feet and is bounded on the north by land of Josephine Pagel and Marie L. Levesque, and on the south by land of Fred Richard and extends westerly to the westerly line of said Pagel and Levesque property and bounded on the east by Mallets Bay Road and contains about two acres, be the same more or less. The easterly part of said lot of land hereby conveyed with a frontage of 204 feet and 125 feet in depth is under contract of lease by the Standard Oil Company of New York." On April 16, 1932, Helen F. Chausse conveyed to the plaintiffs, by quitclaim deed, all her right, title and interest to the land deeded to her and Maurice Chausse by Pagel and Levesque, the description of the frontage on Mallets Bay Road, the boundaries and the approximate acreage being the same as in the previous deed. On July 28, 1932, Maurice H. Chausse quitclaimed all his right, title and interest in the same land to the plaintiffs. On April 22, 1933, both the plaintiffs conveyed the property to J. A. McNamara, and he, in turn, conveyed it to the plaintiff Anna Proulx, so that the title now stands in her name alone.

The defendant's title commences with a quitclaim deed from Josephine Pagel to Marie L. Levesque, dated January 25, 1935, conveying "A certain piece or parcel of land with buildings thereon situated near Mallets Bay, so-called, in the Town of Colchester, and being all and the same land and premises which was conveyed to the said Josephine Pagel and the said Mary Levesque by Robert B. Miller and his wife, Anna D. Miller, by warranty deed dated August 31st, A. D. 1922, and of record in Volume 14, page 22, of said Colchester land records; except that portion of said parcel of land that was conveyed to Morris and Ellen Chausse (sic) which consisted of two hundred four (204) feet frontage on said Mallets Bay Road with a straight line extending to the rear of said lot by the said Josephine Pagel and Mary L. Levesque and of record in the office of the town clerk in said Town of Colchester." Marie Levesque gave a warranty deed of the property, with the same description, to E. H. Reid on April 21, 1937, and on the same day Reid conveyed to the defendants "all the same land and premises that was conveyed by Mary L. Levesque to the said E. H. Reid by warranty deed dated April 21, 1937."

Helen F. Knapp, formerly Helen F. Chausse, was called as a witness for the plaintiffs, and, subject to exception by the defendants, was permitted to testify that shortly before the conveyance of the property to Maurice H. Chausse and herself by Pagel and Levesque, both of whom had died before the time of the trial, Mrs. Levesque told her where the northern boundary of the land, which was to be the subject of the deed, was situated and pointed out its location on the premises. The only ground of exception is that the witness was incompetent under P. L. 1694, which, so far as here material, provides that: "In actions . . . where one of the parties to the contract or cause of action in issue and on trial is dead. . . the other party shall not be admitted to testify in his own favor except to meet or explain the testimony of living witnesses produced against him, or upon a question upon which the testimony of the party afterwards deceased . . . has been taken in writing or by a stenographer in open court to be used in such action and is used therein. . . ."

The defendants' ground of error in the admission of this testimony is that the deed from Pagel and Levesque, both of whom died before the trial, to Mrs. Chausse (now Mrs. Knapp) was the contract or cause of action in issue and on trial, since the proceed-

ing is a petition for a declaratory judgment as to one of the boundaries of the land thereby conveyed, hence that the witness, as the surviving party to the deed, was incompetent. The plaintiff's position is that she did not come within the statutory prohibition, because, having parted with all her right, title and interest in the property, she was not testifying in her own favor.

 This phrase has not been construed in any previous decision of this Court. But it is not to be assumed that it was placed in the act inadvisedly and without legislative intent that it should be given meaning and force in the application of the law. One of the fundamental rules of statutory construction is that the provision must be considered as a whole, and, if possible, effect given to every word, clause and sentence contained therein. *In Re Paquette,* 112 Vt 441, 446, 27 A2d 129; *In re Cornell,* 111 Vt 454, 459, 18 A2d 151; *Jacobs* v. *Holden Leonard Co.,* 111 Vt 245, 250, 4 A2d 343; *Town of Brandon* v. *Harvey,* 105 Vt 435, 440, 168 A 708. P. L. 1694 is an exception to the general rule of competency, having been originally a proviso in an act having for its object the removal and not the creation of disqualification, and therefore it should be given a construction inclining towards competency, although a reasonable one in view of the fraudulent practices against which the statute was aimed. *Paska* v. *Saunders,* 103 Vt 204, 211, 153 A 451, and cas. cit. Moreover, the act should not be given effect beyond the fair scope of its language. *Farrington* v. *Jennison,* 67 Vt 569, 573, 32 A 641.

By the terms of the statute two factors must concur in order to produce incompetency; (1) the witness must be the surviving party to the contract or cause of action in issue and on trial and, (2) the testimony must be in his own favor. Neither standing alone will suffice to reject the witness. With the former of these factors we have no present concern; the question arising under the latter is, when or under what circumstances does a witness so testify?

In the absence of any decision of our own upon this point the construction placed upon the same or equivalent words in similar statutes of other jurisdictions will serve to shed light upon the problem.

In Missouri (Rev. Stat. 1939, § 1887) a surviving witness is incompetent to testify "in his own favor." In *Darnell* v. *Darnell,* Mo Sup, 174 SW2d 812, 816, 149 ALR 1125, the Supreme Court of that State said that the statute "does not purport to disqualify the

party to the contract or cause of action in issue and on trial from testifying but only from testifying in his own favor. . . . In other words . . . he . . . must have an interest in the cause of action to be established by his testimony." And in *Ham and Ham Lead and Zinc Inv. Co.* v. *Catherine Lead Co.*, 251 Mo 721, 158 SW 369, 375, it was held that "in order to be rendered incompetent, the witness must be both interested and be a party to the contract or cause of action, which was made with a deceased party." The survivor is not excluded from testifying under any and all circumstances, since the statute only limits his right to do so. *Tarlton* v. *Johnson*, Mo App, 138 SW2d 49, 52.

The statutes of Wisconsin (Statutes 1945, § 325.16), New York (Civil Practice Act, § 347) and Washington (Remington Rev. Stats. 1932, § 1211, as Amend. Chap. 84, para. 1, Laws 1927) provide that a surviving party shall not be a witness "in his own behalf or interest." We take this expression to be essentially the same as "in his own favor". "In behalf of" is defined as "in the interest of", "in the support of," "for the benefit of"; and to favor is "to give support to, to sustain", See Webster Int. Dict. (2nd ed. Unabridged). It is to be noted, also, that the phrase "in his own behalf" was used as synonomous with "in his own favor", in *Ainsworth* v. *Stone*, 73 Vt 101, 103, 50 A 805, a case involving the statute which is now P. L. 1694.

Concerning the Wisconsin act, it was held in *Nolan* v. *Standard Fire Ins. Co.*, 243 Wis 30, 9 NW2d 74, 77, that it "does not exclude testimony of persons who are not parties to and have no legal interest whatever in the subject matter of the action, although they may remotely be interested, in some other sense of the term, in the outcome of the litigation". And, construing the New York statute, the Court of Appeals of that State had this to say: "The evidence of (the witness) on behalf of the plaintiff was not prohibited merely because she was a party (to the transaction with the deceased) or because she had an interest in the decision of the litigation. The prohibition in this case could only rest successfully on the circumstance that she had a financial interest in the event of the litigation which would be supported and forwarded by the testimony which she proposed to give, so that if permitted to give it she would be testifying in her own behalf or interest". *Harrington* v. *Schiller*, 231 NY 278, 285, 132 NE 89, 91. See also *Beakes* v. *DaCunha*, 126 NY 293, 27 NE 251, 252; *Carpenter* v. *Soule*, 88 NY

251, 257-8, 42 Am Rep 248. The principle is recognized and applied in *Brauns* v. *Housden,* 195 Wash 140, 79 P2nd 981, 982-3.

The defendants rely upon the decision in *McKellop* v. *Jackman,* 50 Vt 57, to show that Mrs. Knapp had an interest in the event of the litigation and so testified in her own favor. That case was an action of trespass and trover for a quantity of wood, cut upon a farm upon which the defendant, as administrator of the estate of Wheelock, held a mortgage executed by Carpenter who cut the wood after the condition had been broken, and the title had become absolute in the defendant. Carpenter sold the wood to the plaintiff, and was offered as a witness to show that the decedent, during his lifetime, had given him license to cut and sell the wood, but was held to be incompetent to testify. It is argued that Carpenter had an interest, conceded to be remote, which consisted in the possibility that, if the verdict should be for the defendant, the plaintiff could have brought suit against him for selling the wood to which he had no title, and therefore his testimony would have been in his own favor. The defendants urge that the same situation exists in the case at bar, for, they say, by Mrs. Knapp's own testimony it appears that when she sold to the plaintiffs she pointed out to them the northern boundary of the property substantially in accordance with their present claim, and therefore she was interested to forestall a possible action by the plaintiffs against her for a false representation as to the extent of the land conveyed.

The decision in the McKellop case rests upon the ground that the offered evidence touched the very issue or contract on trial and that the estate of the deceased was interested in the result, and no question of interest on the part of the witness is considered or even mentioned in the opinion. In the present case an examination of the transcript fails to disclose that Mrs. Knapp testified as alleged in the defendant's brief. Even if it were otherwise, the fact would not disqualify her as a witness, although her apprehension of a future action against her would bear upon her credibility. The same is to be said of the suggestion, also contained in the defendant's brief, that since she is the sister of Mrs. Proulx, she might, if she survived the latter, be a beneficiary of her estate. Such remote interest, if it exists, cannot be said to be in the contract or cause of action which was in issue. See *Nolan* v. *Standard Fire Ins. Co.,* 243 Wis 30, 9 NW2d 74, 77.

We conclude that a witness testifies "in his own favor,"

within the intent of P. L. 1694, when he has a present legal interest in the contract or cause of action which his testimony will tend to establish. It is this interest and not the nature of his testimony that renders him incompetent. Tested by this rule Mrs. Knapp was a competent witness. She had no such interest in the issues involved in the controversy and none in its result. Whatever the judgment might be she would in no direct legal way be affected by it, either to her advantage or disadvantage. There was no error in the admission of her testimony.

The defendants offered in evidence the certified copy of the transcript of the testimony of the deceased, Mrs. Levesque, given at the trial of an action brought by them against the present plaintiff, Albert Proulx, which was excluded subject to exception.

That proceeding was in tort based upon P. L. 8555 for the wilful and malicious removal of an alleged boundary fence dividing the properties of the parties herein. (See 111 Vt 274, 15 A2d 835.) The fence in question was one erected by Mrs. Levesque, after Mrs. Proulx had obtained title to her land, along the line of certain markers placed by the Standard Oil Company to indicate the northern limit of the lot that it held under its lease. The Parrows claimed that this fence, and the extension of its line, constituted the northerly boundary of the Proulx lot; Proulx, that the true line was as is claimed in the case now before us.

The record of relevant testimony given by a witness, who has since deceased, in a former trial, in which both the issue and the parties were substantially the same as in the present trial, is admissible in evidence. *Mathewson* v. *Estate of Sargent,* 36 Vt 142, 143-4; *Lynch's Admr.* v. *Murray,* 86 Vt 1, 13-14, 83 A 746; *Houghton* v. *Grimes,* 103 Vt 54, 61, 151 A 642. The method of reproducing such testimony by a certified copy of the transcript is authorized by P. L. 1392. *Houghton* v. *Grimes, supra.* The plaintiffs do not deny that the issue is substantially the same in the two cases; or that the recorded testimony of Mrs. Levesque, if admitted, would have been material and relevant, since she categorically denied that she had the conversation with Mrs. Knapp (then Mrs. Chausse), regarding the boundary line, and pointed it out to her, as the latter testified. The only objection is that there is no substantial identity of parties, because Albert Proulx was the only defendant in the previous action, and the title to the land was then, as it is now, in Mrs. Proulx.

In *Lynchs Admr.* v. *Murray,* 86 Vt 1, 13-14, 83 A 746, and again in *Houghton* v. *Grimes,* 103 Vt 54, 61, 151 A 642, the rule as to the substantial identity of parties and issues as stated by Professor Wigmore in his Treatise on Evidence, (3 ed) pars. 1386 and 1387, received the approval of this Court. In the latter paragraph it is said that: "It is sufficient if the issue was the same, or substantially so, with reference to the likelihood of adequate cross-examination, because the opponent has thus already had the full benefit of the security intended by the law. The general rule in this shape is nowhere disputed. But there is naturally much variance shown in the strictness of its application in specific cases. It is enough to suggest that the situation is one that calls for common sense and liberality in the application of the rule and not a narrow and pedantic illiberality. On the whole the judicial rulings show a liberal inclination to receive testimony already adequately tested." In para. 1388 the learned author goes on to say : "The principle, then, is that where the interest of the person was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end. Thus the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue. It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party opponent in that case had the same interest and motive in his cross-examination that the present opponent has. . . ."

The determination of this question of interest and motive is for the trial court to decide, upon an inspection of the record of the former trial. *Chase* v. *Springvale Mills Co.,* 75 Me 156, 160, and see Wigmore, supra, para. 1388. But the ruling upon this point is not necessarily conclusive, for it is the same in nature as any preliminary finding as to the competency of a witness, and so is subject to review where it appears from the evidence to have been erroneous or founded upon an error in law. *Capital Garage Co.* v. *Powell,* 97 Vt 207, 210, 122 A 423 ; *Shields* v. *Ins. Co.,* 102 Vt 224, 228, 147 A 352. The certified transcript of evidence taken at the former trial is referred to and made a part of the defendant's bill of exceptions in the present case, and is before us for consideration in passing upon the ruling of the trial court in the exclusion of the offered evidence.

The defendants claim that Albert Proulx was privy in

title to his wife because he had, by virtue of his marital rights, a freehold interest in her real estate. The deed to her from J. A. McNamara of April 22, 1933, contained no provision that the property was conveyed to her sole and separate use, and the property was not so held. *Seaver* v. *Lang,* 92 Vt 501, 507-8, 104 A 877; *Dietrich* v. *Hutchinson,* 73 Vt 134, 140, 50 A 810, 87 Am St Rep 698. By the provisions of P. L. 3076 (originally No. 90, Acts 1919) she had the right to manage and control this real estate, and to convey or mortgage it by her sole deed, except that a homestead interest therein could be conveyed or mortgaged only by the joint deed of herself and her husband. It was held in *City of Barre* v. *Town of Bethel,* 102 Vt 22, 27, 145 A 410, and in *Roberge* v. *Town of Troy,* 105 Vt 134, 142, 163 A 770, that a husband has a freehold interest in the real estate of his wife that is not held to her sole and separate use, which has not been taken away by the statute just mentioned But this doctrine does not appear to be sound. Before No. 90, Acts of 1919, became the law, a married woman could convey or mortgage by her sole deed only such real estate as she held to her sole and separate use. See G. L. 3523 (1917). As to her real estate not so held she was under her common law disability and her husband had a freehold estate therein of which she could not deprive him without his consent. Consequently his joinder in a conveyance of it was necessary to pass title. But in property that was held to her own use her husband had no marital rights. *Dietrich* v. *Hutchinson,* 81 Vt 160, 171, 69 A 661; *Barrows* v. *Dugan's Est.,* 81 Vt 441, 443, 92 A 927; *Hubbard* v. *Hubbard,* 77 Vt 73, 76, 58 A 969, 67 LRA 969, 107 Am St Rep 749, 2 Ann Cas 315; *Dietrich* v. *Hutchinson,* 73 Vt 134, 139, 50 A 810, 87 Am St Rep 698. But the broad powers of management, control and alienation granted to a married woman by P. L. 3076, which are not confined to real estate held to her sole and separate use, but embrace all of her property of this nature, have the effect of permitting her to deprive her husband of his marital rights and are inconsistent with the conception that he still has a freehold estate in the land. The common law disability of the wife has been removed in this respect by the statute. It is considered that the holdings on this point in *City of Barre* v. *Town of Bethel* and in *Roberge* v. *Town of Troy* are no longer to be followed. There was, therefore, no privity of title between Albert Proulx and his wife.

Neither can it be said that privity exists by reason of any

homestead interest to which he may be entitled by the provisions of P. L. 2563. Such an interest vests no title in him during his wife's lifetime but is only a contingent and inchoate right, which, if not released or otherwise barred, he may enforce if he survives his wife. *McElroy* v. *Bixby,* 36 Vt 254, 260, 84 Am Dec 684; *Jewett* v. *Brock,* 32 Vt 65, 66; *Davis* v. *Andrews,* 30 Vt 678, 681; *Howe* v. *Adams,* 28 Vt 541, 544.

However, it appears by the transcript to which we are referred that Albert Proulx, in his testimony, justified his removal of the fence on the ground that it was not upon the boundary, but was entirely upon his wife's land, and that the true boundary had been established by a survey which he had previously caused to be made. This survey placed the line as the present plaintiffs claim it to be. Mrs. Proulx was present in court and testified to the same effect. It is evident that Albert had a strong motive and interest in the cross examination of the witnesses produced against him, because by the statute under which the action was brought (P. L. 8555) an adverse verdict would render him liable in damages and he might also be prosecuted criminally and punished by fine or imprisonment or both. Mrs. Proulx was also interested in the outcome, for it was for her advantage that the boundary should be found to be as shown by the survey. The same counsel who now appear for the Proulx acted for the defense of Albert and one of them subjected Mrs. Levesque to a thorough and searching cross-examination.

Under these circumstances, and applying the rule as stated by Professor Wigmore and approved by our decisions, we hold that the recorded testimony of Mrs. Levesque was admissible for the purpose for which it was offered, that is, to meet and contradict the evidence given by Mrs. Knapp, and that its exclusion was error.

Two exceptions to the charge have been briefed by the defendants. The first is upon the ground that the Court failed to instruct the jury that the acts or omissions of the Chausses, as the plaintiffs' predecessors in title, were binding upon the plaintiffs, and that acts of possession or similar acts by all parties to the original conveyance or by their successors in title could be considered as evidence of contemporaneous construction bearing upon the intention of the original parties.

After this exception was taken, the court gave a supplemental instruction upon the subject to which no further objection

was made or exception taken. So the error, if any, was cured. *Hambleton* v. *Aja Granite Co.,* 96 Vt 199, 204, 118 A 878, and cas. cit.; *Rule* v. *Johnson,* 104 Vt 486, 489, 162 A 383.

The other exception is based upon the claim that the jury were not instructed that if they should find that the northerly boundary of the land leased to the Standard Oil Company was intended by the parties to be a part of the northerly boundary of the property conveyed by Pagel and Levesque to the Chausses, then that line, and its extension, constituted a monument, and controlled any reference to acreage contained in the deed. An examination of the charge makes it plain that the conflicting claims of the parties were adequately presented, and that although the boundary of the leased land was not referred to as a monument it does not appear that the jury could have been misled thereby. This exception is not sustained.

*Judgment reversed and cause remanded.*