# In re Estate of Rutherford Farr

[552 A.2d 387]

No. 84-574

Present: **Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed July 15, 1988

*James W. Swift* and *Susan M. Murray* of *Langrock Sperry Parker & Wool*, Middlebury, for Appellant.

*James H. Ouimette*, Vergennes, for Appellees.

**Dooley, J.** This case involves a claim submitted against the estate of Rutherford Farr by Robert and Ramona Fuller. The probate court allowed the claim but reduced it by the amount of a cash transfer made to the claimants by Rutherford Farr before his death. On appeal, the superior court rejected the theory that the transfer should be set off against the Fullers' claim. Thus, the court allowed the claim in full. On appeal to this Court, the estate claims error in the admission of the testimony of Robert Fuller in the face of the dead man's statutes, 12 V.S.A. §§ 1602, 1603. We find that the estate waived the protection of the dead man's statute before the probate court and affirm.

The facts surrounding the claim are, as noted below, undisputed. Rutherford Farr sold his farm in 1977 and moved into a mobile home on his sister's land in Lincoln, Vermont. Robert Fuller, who was a local farmer, met Mr. Farr at the farm auction. Subsequently, Mr Farr asked Mr. Fuller to help install a power pole near his mobile home. Mr Fuller did this work and, in return, Mr Farr began going regularly to the Fuller farm to do odd

jobs. Subsequently, Mr. Farr moved his mobile home onto the Fuller farm. Thereafter, Mr. Farr had a stroke and became unable to care for himself. He moved into the Fuller house, where he was cared for by Ramona Fuller, Robert Fuller's wife. He died in November, 1980.

Rutherford Farr made no regular payments to the Fullers for rent, care or other services. He did, however, show Mr. Fuller a will that left significant money and property to Mr. Fuller. He indicated that the will provisions were made in return for taking care of him. However, just prior to his death, Rutherford Farr changed his will and left all of his estate to a relative.

At some point after Robert Fuller was shown the Farr will, Mr. Farr gave Mr. Fuller $12,000 in cash. Mr Fuller needed a new bulk tank for milk storage, and had been threatened with the loss of his market if he did not obtain the tank. Mr. Farr knew of this problem and went to banks where he had accounts and drew out $12,000 in cash. He gave it to Robert Fuller for the bulk tank. It was used to buy the tank.

Following Rutherford Farr's death, the Fullers filed a claim with the estate for $17,000 plus, for "lot rent, electricity, board, room, laundry, transportation, and general care." The estate denied the claim, and the Fullers appealed to the Addison County Probate Court. The court held a hearing where the witnesses were the Fullers and Richard Hallock, a hired hand on the Fuller farm. The first witness was Robert Fuller, who testified about how he met Rutherford Farr and was then asked about Mr. Farr's request to move his mobile home to the Fuller farm. At that point, the lawyer for the estate objected to the testimony, citing the dead man's statute. After some discussion, the question about Mr. Farr's request was withdrawn. After further testimony, the dead man's statute question was again reached when Robert Fuller was asked whether Mr. Farr ever said anything about paying for rent and services. The lawyer for the estate first objected to the question and then withdrew the objection. No further evidentiary objections were made to the direct examination of Robert Fuller although Mr. Fuller testified to conversations about the Farr will. However, after extensive discussion among the lawyers and the court about the theory behind the Fuller claim, the estate stipulated to the claim on a quantum meruit theory subject to further evidence on whether Rutherford Farr had paid off the claim through the $12,000 transfer and other cash payments.

The $12,000 payment was raised for the first time by the lawyer for the estate during the cross-examination of Robert Fuller. The lawyer asked whether Rutherford Farr had given the witness $12,000, and the witness answered in the affirmative. On redirect examination, Mr. Fuller was asked to explain the circumstances surrounding the $12,000 payment. The estate initially objected on relevancy grounds and then objected based on the dead man's statute. The probate court allowed the evidence, the substance of which is set forth above. The court found, however, that the $12,000 was a payment against the claim for rent and services and reduced the claim allowed by that amount.

The Fullers appealed to the superior court and filed a statement of questions relating to the $12,000 set-off pursuant to V.R.C.P. 72(c). The estate filed a *motion in limine* asking that the court "rule inadmissible all testimony by the plaintiffs regarding any agreement or contract between the plaintiffs and decedent." The superior court allowed all the testimony about the will and the bulk tank and found that the $12,000 payment was a gift rather than a payment on the Fullers' claim. The motion in limine was denied on the basis of *Comstock's Adm'r* v. *Jacobs,* 89 Vt. 133, 94 A. 497 (1915), a waiver case discussed below.

There are two issues on appeal: (1) whether the trial court erred in allowing plaintiffs to testify in their own favor regarding the $12,000 transfer to them by Rutherford Farr; and (2) whether the trial court's finding that the $12,000 transfer was a gift is supported by sufficient evidence.

On the first issue, the estate argues that the trial court erred in denying the motion in limine. That motion sought to exclude the testimony of the Fullers under the dead man's statutes, 12 V.S.A. §§ 1602, 1603. The first statute, 12 V.S.A. § 1602, prohibits a party from testifying in his or her own favor where the other party to the contract or cause of action in issue and on trial is dead or insane, unless certain exceptions apply. The only statutory exception possibly relevant to this appeal is where the testimony is offered "[t]o meet or explain the testimony of living witnesses produced against him." 12 V.S.A. § 1602(1). The second statute is similar to the first but applies when an executor or administrator is a party. 12 V.S.A. § 1603. The second statute is applicable in this case because the dispute is between a party to the alleged contract and the estate of the other party.

In addition to the statutory exceptions, we have recognized a broad waiver rule. Thus, where the beneficiary of the disqualification — here, the executor of the estate of Rutherford Farr — acts inconsistently with the statutory disqualification, the disqualification is waived. See, e.g., *Comstock's Adm'r,* 89 Vt. at 138, 94 A. at 499. Waiver can occur because the disqualified party is allowed to testify in his own favor to the contract or cause of action in issue without objection by the adverse party. *In re Estate of Boisvert,* 135 Vt. 69, 73, 370 A.2d 209, 211-12 (1977); *Shearer* v. *Welch,* 126 Vt. 106, 110, 223 A.2d 552, 555 (1966); *Collins* v. *Estate of Collins,* 104 Vt. 506, 509, 162 A. 361, 362 (1932). Similarly, it can occur because the adverse party calls the disqualified party and inquires about the contract or cause in issue or, in certain circumstances, where the adverse party cross-examines the disqualified party. *Shearer,* 126 Vt. at 110, 223 A.2d at 555; *Trask* v. *Walker's Estate,* 100 Vt. 51, 62, 134 A. 853, 858 (1926); 3 Jones On Evidence § 20:46, at 696-97 (6th ed. 1972). We have insisted that the adverse party act consistently with the disqualification at all stages of the proceeding to avoid a finding of waiver. Thus, failure to object in the probate court will be a waiver of the disqualification for all further proceedings. *Estate of Boisvert,* 135 Vt. at 73, 370 A.2d at 211-12; *Collins,* 104 Vt. at 509, 162 A. at 362; *Trask,* 100 Vt. at 62, 134 A. at 858.

The dead man's statutes must be construed in favor of the challenged witness. *Proulx* v. *Parrow,* 115 Vt. 232, 236, 56 A.2d 623, 626 (1948); *Paska* v. *Saunders,* 103 Vt. 204, 211, 153 A. 451, 454 (1931). The statutes were created as exceptions to the broad common law rule that disqualified interested parties from testifying in their own favor — thus, they are statutes intended to allow otherwise inadmissible evidence rather than statutes intended to create rules of disqualification. *Proulx,* 115 Vt. at 236, 56 A.2d at 626. We must also recognize that the statutes can be the cause of tremendous injustice by preventing proof of reasonable and valid claims. See McCormick on Evidence § 65, at 160 (3d ed. 1984); Ray, *Dead Man's Statutes,* 24 Ohio St. L.J. 89, 105-08 (1963). While measuring the wisdom of legislation is a task for the Legislature, we must construe the legislation so as not to lead to unreasonable or irrational results. See *Littlefield* v. *Department of Employment & Training,* 145 Vt. 247, 256-57, 487 A.2d 507, 512 (1984).

There is no question that the testimony of Robert Fuller would be excluded by the dead man's statutes unless a statutory exception applies or there is a waiver. In presenting his claim, Mr. Fuller was testifying in his own favor with respect to a contract or cause of action in issue. See 12 V.S.A. § 1602. The other party to the contract or cause was the deceased, Rutherford Farr. Further, the opposing party in the probate and superior courts was the executor of the estate of Rutherford Farr. See 12 V.S.A. § 1603.

We also think that the superior court correctly found a waiver. It could have found the evidence admissible on any one of three theories. First, the estate waived the protections of the dead man's statutes when it allowed Robert Fuller to testify about the claim for rent and services without objection (or more precisely after withdrawing any objection). See *Shearer,* 126 Vt. at 110, 223 A.2d at 559; *Collins,* 104 Vt. at 509, 162 A. at 362. The failure to object was a waiver with respect to all testimony related to the claim, including the testimony on the intent behind the $12,000 gift for the bulk tank. Second, there was a waiver when the lawyer for the estate elicited the fact of the $12,000 transfer from Rutherford Farr to Robert Fuller. See *Trask,* 100 Vt. at 62, 134 A. at 858. That was the only evidence presented in the probate court by the estate on the fact of the transfer and the amount. The estate could not show that the transfer occurred and then use the statute to stop any explanation of that transfer. Third, Mr. Fuller's testimony came within the statutory exception contained in § 1602(1), see also § 1603, for testimony given "[t]o meet or explain the testimony of living witnesses produced against him." When Mr. Fuller was asked by the attorney for the estate whether he had received $12,000 from Rutherford Farr, he became a live witness against himself and was entitled to explain his testimony.

The trial court correctly found that this case is controlled by the decision in *Comstock's Adm'r,* 89 Vt. 133, 94 A. 497. In *Comstock's Adm'r,* the administrator called the defendant and examined him with respect to the decedent's bank book to show that he received payments from the decedent. The administrator then relied on the statutory disqualification to attempt to prevent any testimony about the circumstances surrounding the payments. That testimony, which was allowed by the trial court, showed that there was a contract between the defendant and the decedent under which the defendant would receive all the dece-

dent's property in return for life support. In upholding the ruling of the trial court, this Court stated:

> It would be most unjust to require the defendant to admit having received the bank book and its proceeds and deny him the opportunity to explain how he came by them. Upon the defendant's theory of the case the transfer of the bank book was one of several facts making up a whole transaction. Having called the defendant as a witness to one of the constituent facts, plaintiff could not object, on any just ground, to his testifying to the whole. To sustain his objection would be to countenance his occupying inconsistent positions. For the protection of the estate which the plaintiff represents, the statute denied the defendant the right to testify in his own behalf. The plaintiff was at liberty to insist upon or waive the benefit of the statute as seemed to him best for the interests of the estate. He could keep the door shut, if he chose to do so; but he could not open it, so far or so long as suited his own purposes, and then close it. Once open it remains open until the end of the litigation.

*Id.* at 138, 94 A. at 499. See also *Trask*, 100 Vt. at 62, 134 A. at 858 (where witness testified that she received property from the estate "it would be unjust to refuse to receive her explanation"). The door opening metaphor in *Comstock's Adm'r* is apt for this case. By withdrawing the initial objection to the testimony of Robert Fuller, the lawyer for the estate made him a competent witness to the claim in issue. The estate then attempted to use that opening to show that Robert Fuller received $12,000 from Rutherford Farr and then to close the door immediately to preclude any testimony about why the transfer was made. To sustain the estate's position here would be to prove Wigmore's description of the dead man's statute as "a mass of vain quiddities which have not the slightest relation to the testimonial trustworthiness of the witness." 2 Wigmore on Evidence § 578, at 821 (Chadbourn rev. 1979).

The second issue raised by the estate relates to the trial court's finding that the $12,000 transfer was a gift for the bulk tank and was not a payment for rent or services rendered to Rutherford Farr by the Fullers. The estate appears to agree that this theory is valid if supported by the evidence. It argues, however, that this Court's decision in *Colby's Executor* v. *Poor,* 115

Vt. 147, 154, 55 A.2d 605, 609 (1947), requires "clear and convincing proof" to sustain a claim of gift if it is first asserted after the death of the alleged donor and that no such evidence was present in this case. The evidence in this case does not appear to fit within the caveat of *Colby's Executor* because the gift claim was not first asserted after the death of Rutherford Farr. In any event, the trial court found that "any presumption that the payment was toward an indebtedness owed the Fullers has been amply rebutted in this case," and our review of the transcript indicates that this conclusion is supported by the evidence. This determination is sufficient to satisfy any requirement of *Colby's Executor* which made clear that the gift question is for the trier of fact to decide and will be affirmed if it is factually supported.

For the above reasons, the judgment of the superior court that Robert and Ramona Fuller should have been awarded their entire claim against the estate of Rutherford Farr with no credit for the $12,000 transfer is affirmed.

*Affirmed.*