**ESTATE OF Charles S. SMITH, Jr., and Charles S. Smith, III and Fleet Bank, Executors, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 2:95–CV–195.

United States District Court,
D. Vermont.

Sept. 19, 1997.

Steven Lee Saltonstall, Witten, Saltonstall, Woolmington, Bongartz & Campbell, P.C., Bennington, VT, for Plaintiffs.

Thomas D. Anderson, Sheehey Brue Gray & Furlong, Burlington, VT, Carol L. Shea, Asst. U.S. Atty., Tristram J. Coffin, Office of the U.S. Atty., Dist. of Vermont, Burlington, VT, George P. Eliopoulos, U.S. Dept. of Justice, Tax Div., Washington, DC, for Defendant.

William Gilbert Livingston, Vermont Land Trust, Montpelier, VT, for Amicus Vermont Land Trust.

## OPINION AND ORDER

SESSIONS, District Judge.

### I. *Introduction*

This is a complaint for refund of taxes and interest paid by the Estate of Charles S. Smith, Jr. ("Smith II") to the Internal Revenue Service ("IRS") in the amount of $227,265.70. The Estate claims that the IRS erroneously disallowed a charitable deduction from the value of the gross estate. The disallowed deduction represented the claimed value of the development rights to Smith II's farm. The development rights were donated to the Vermont Land Trust ("VLT") prior to Smith II's death. The VLT has been granted leave to appear as amicus curiae in these proceedings. Pending before the Court are cross motions for summary judgment by the United States (paper 20) and by the Smith Estate (paper 24). For the reasons that follow, both motions are denied.

### II. *Factual Background*

For purposes of this summary judgment motion, the following facts are not in dispute. In 1952, Smith II bought a 291 acre farm located in Danby, Vermont, where he lived until his death in 1991. On January 25, 1989, he executed a durable power of attorney naming his son, Charles S. Smith, III, ("Smith III") as his attorney-in-fact. The instrument gave the son the power to "sell, purchase, lease, mortgage, and convey" any real property owned by the father. On September 24, 1990, Smith III executed a deed donating the development rights to the farm to the VLT. Smith II died on March 2, 1991. Smith III and Fleet Bank were named co-administrators of Smith II's estate.

On January 5, 1992, the Estate filed its federal estate tax return. In its return, the Estate excluded $436,000 from the value of the gross estate as a charitable gift. The Estate claimed that this amount represented the fair market value of the development rights to the farm, based on a 1990 appraisal.

The IRS audited the return, and disallowed the deduction. The IRS claimed that Smith III exceeded his authority as attorney-in-fact when he donated the development rights to the farm to the VLT.

The IRS assessed an additional tax of $189,247.83, plus interest of $38,017.87, for a total of $227,265.70. The Estate paid this amount to the IRS in April and June, 1994. It thereafter filed a claim for refund of the tax and interest. On January 19, 1995, the IRS denied the Estate's claim for refund. On administrative appeal by the Estate, the denial was upheld. This action for refund followed.

### III. *Discussion*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The

party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. *Id.*, at 325, 106 S.Ct. at 2554.

The parties do not dispute that Vermont state law governs whether the power of attorney at issue authorized Smith III to donate to the VLT the development rights of his father's farm. *See Morgan v. Commissioner*, 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 585 (1940). At issue is whether the term "convey" as used in this power of attorney encompassed the power to make a gift of an interest in the property.

The power of attorney executed by the father named the son his "true and lawful Attorney," with the power to

> sell, purchase, lease, mortgage and convey any real property owned by me or to be acquired by me, and for this purpose, make, execute, sign, seal, acknowledge and deliver unto the Seller or Purchaser thereof, a proper and sufficient deed of conveyance of all my right, title and interest and estate in said real estate, or any other documents necessary for the completion of such transactions.

Power of Attorney ("POA") (paper 24, att. 1).[1] This power of attorney gave Smith III authority to act for his father generally, in matters involving his real and personal prop-

erty, including the power to convey his real property. It did not explicitly empower him to make a gift of an interest in the property.

▮▮▮ The nature or extent of authority granted to an agent by a power of attorney is an issue of fact which depends on an interpretation of the agreement, and ordinary principles of contract interpretation apply. *See* Restatement (Second) of Agency § 32 (1958); *Estate of Sawyer v. Crowell*, 151 Vt. 287, 292, 559 A.2d 687, 690 (1989). *See also Russell v. Atkins*, 679 A.2d 333, 335 (Vt.1996) (agent's authority may be proven from the facts and circumstances attending the transaction in question).[2] In construing written instruments to ascertain the intention of the parties, a court must give effect to every part, and from the parts form a harmonious whole, if possible. *Cross–Abbott Co. v. Howard's, Inc.*, 124 Vt. 439, 441, 207 A.2d 134, 137 (1965). When an agreement is clear and unambiguous, its plain meaning governs its interpretation. *Workman v. Agency of Transportation*, 163 Vt. 606, 608, 657 A.2d 174, 176 (1994).

▮▮▮ As a threshold matter, the question of whether a term in an agreement is ambiguous is a matter of law for the court to decide. *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). *See also Vogel v. W.A. Sandri, Inc.*, 898 F.Supp.

---

1. The Power of Attorney enumerated the following powers:

   to demand, receive and sue for all accounts, debts, moneys, legacies or other personal property to which I am now or hereafter may be entitled; to sign my name to checks on all banks and trust companies in which I have or may have deposits; to have access to all safe deposit boxes leased by any banking or trust companies; to endorse my name on all checks, drafts and other instruments in writing payable to me or to my order, to sell, assign, pledge and convey all stocks, bonds or other securities in my name or to my personal account, and for that purpose to sign, execute and deliver all assignments and other instruments in writing necessary to transfer said stocks, bonds and other securities to the purchaser thereof; *to sell, purchase, lease, mortgage and convey any real property owned by me or to be acquired by me, and for this purpose, make, execute, sign, seal, acknowledge and deliver unto the Seller or Purchaser thereof, a proper and sufficient deed of conveyance of all my right, title and interest and estate in said real estate, or any other*

   *documents necessary for the completion of such transactions.*
   Hereby giving and granting unto my said Attorney full power and authority to do and perform all and every act and thing whatever requisite and necessary to be done in and about the premises as fully and to all intents and purposes as I might do or could do if personally present, hereby ratifying and confirming all that said Attorney shall do or cause to be done by reason hereof, . . .
   POA (paper 24, att. 1) (italics supplied).

2. In *Conger v. Gruenig*, 117 Vt. 559, 561, 96 A.2d 821, 822 (1953), the Vermont Supreme Court, in construing a limited power of attorney granted especially for the express purpose of settling the estate of a relative, held that "[w]hen an agent is given special and limited authority he is bound to pursue it strictly." The power of attorney at issue is a general power of attorney, which is not expressly limited. The general power of attorney is construed neither strictly nor liberally, but so as to carry out the intent of the principal. Restatement, § 34, Comment on Clause (e).

254 (D.Vt.1995). A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation. *Isbrandtsen*, 150 Vt. at 577, 556 A.2d at 83; *Vogel*, 898 F.Supp. at 257.

In determining whether an ambiguity exists, a Vermont court may consider the circumstances surrounding the making of the instrument, if the ambiguity does not appear on the face of the instrument. "Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Isbrandtsen*, 150 Vt. at 579, 556 A.2d at 84; *Vogel*, 898 F.Supp. at 257.

The Government contends that the power of attorney is unambiguous, and clearly did not confer the power to make gifts. The Plaintiffs argue that the power of attorney unambiguously conferred the power to make gifts by its inclusion of the term "convey," and, in the alternative, that if the provision is ambiguous, an examination of the attendant circumstances will demonstrate that Smith II intended that his attorney-in-fact be empowered to make a gift of the development rights to the property to the VLT.

To date, no reported decision from a Vermont court has addressed the meaning of "convey" in the context of a general power of attorney. Other jurisdictions have frequently held that a general power of attorney authorizing a person to convey real property does not authorize conveyance as a gift. *See King v. Bankerd*, 303 Md. 98, 492 A.2d 608, 612 (1985) (collecting cases). As the Court in *King* pointed out, the power to make a gift is a power that is potentially hazardous to the principal's interests, and will not lightly be inferred from broad, all-encompassing grants of power to the agent. *Id.*, 492 A.2d at 613. *See also, Aiello v. Clark*, 680 P.2d 1162, 1166 (Alaska 1984); *Whitford v. Gaskill*, 345 N.C. 475, 480 S.E.2d 690, 691–92 (1997); *Johnson v. Fraccacreta*, 348 So.2d 570, 572 (Fla.Dist.

Ct.App.1977); *Honeycutt v. Farmers & Merchants Bank*, —— N.C.App. ——, 487 S.E.2d 166, 168 (1997).

The Supreme Court of Vermont has consistently used the term "convey" to refer to any transfer of an interest in land. In *Colby v. Colby*, 157 Vt. 233, 235, 596 A.2d 901, 902 (1991), for example, the Court discussed two transactions in which it described land as "conveyed," one for consideration, and the other as a gift. In *Bills v. Wardsboro Sch. Dist.*, 150 Vt. 541, 542–43, 554 A.2d 673, 674–75 (1988), the Court referred to the gift of real property to build a school as a "conveyance." A parcel of land was "conveyed" as a gift in *Tokarski v. Gates*, 138 Vt. 220, 221, 414 A.2d 1155, 1156 (1980). In *Ball v. Hall*, 129 Vt. 200, 274 A.2d 516 (1971), the term "conveyance" was used to describe a gift of land to the town of Bakersfield.[3]

None of these cases, however, addressed the nature of an agent's authority to "convey," when the term is preceded and followed by terms that suggest that the context is a transfer for consideration: "sell, purchase, lease, mortgage and convey ... and for this purpose ... deliver unto the Seller or Purchaser thereof ..." General, all-embracing expressions, such as the second paragraph of the power of attorney at issue, granting "full power and authority to do and perform all and every act and thing whatever requisite and necessary ... as fully and to all intents and purposes as I might or could do if personally present, hereby ratifying and confirming [the agent's actions]," add nothing to the attorney-in-fact's enumerated powers, and are disregarded, in the words of the Restatement, as "meaningless verbiage." Restatement, § 34, Comment on Clause (e). *See also Estate of Casey v. Commissioner*, 948 F.2d 895, 901 (4th Cir.1991). These features of the power of attorney suggest that inclusion of the term "convey" did not authorize a donative transfer of an interest in land. *But see Estate of Neff v. Commissioner*, 73 T.C.M. (CCH) 2606 (1997) (general language sufficient evidence of principal's intent to al-

---

**3.** In an unpublished decision this district has concluded that the term "convey" in a covenant providing for a right of first refusal is broad enough to encompass the assignment of an inter-est in the property. *Quechee Lakes Corp. v. L.E. Boeske Assoc.*, No. 1:96CV107, slip op. at 4 (D.Vt. Aug. 8, 1996).

low conveyance of property as gift); *In re Estate of Augustine*, 695 A.2d 836, 838 (Pa.Super.1997) (same); *Taylor v. Vernon*, 438 Pa.Super. 479, 652 A.2d 912, 916 (1995) (same).

The language of the power of attorney as a whole, however, does not clearly and unambiguously preclude the power to make a gift. In *Casey*, by contrast, the power of attorney authorized a son to "lease, sell, grant, convey, assign, transfer, mortgage and set over to any person, firm or corporation and for such consideration as he may deem advantageous, any and all of my property . . ." and to "accept and receive any and all consideration payable to me on account of any such lease, sale, conveyance, transfer or assignment and to invest and reinvest the proceeds derived therefrom." 948 F.2d at 896–97. The enumeration of general powers to grant, convey and transfer was qualified by the phrase "for such consideration as he may deem advantageous," and followed by an authorization to receive payment for any such transfer or conveyance. Here, the general power to convey was not qualified by a reference to consideration, or an authorization to accept payment.

The power of attorney at issue here, after authorizing Smith III to sell, purchase, lease, mortgage and convey real property, states that he may "for this purpose, make, execute, sign, seal, acknowledge and deliver unto the Seller or Purchaser thereof, a proper and sufficient deed of conveyance of all [the principal's] right, title and interest and estate" in the property. A literal reading of some of this language is impossible: it would authorize an attorney-in-fact to deliver to a seller a deed conveying the principal's right, title and interest to land he did not own. Furthermore, if the conveyance is to be of all "right, title and interest and estate," an attorney-in-fact would be unable to lease or mortgage property on behalf of his principal, as authorized by the previous clause.

The two clauses are inconsistent with one another, and appear to be the result of careless drafting or inadvertent omission of additional terms. How the clauses may be construed to form a "harmonious whole" is far from clear at this stage of the proceedings.

The second clause certainly cannot support the construction that the Government urges: that it unambiguously expresses that any conveyance of property would be to a "Purchaser." Given the absence of any explicit expression of intention in the document, the broad powers conveyed therein, the broad use of the term "convey" in Vermont law, and the internal inconsistencies of the clauses in the document, the Court finds as a matter of law that the term "convey" as used in the power of attorney is ambiguous. "Convey" could reasonably be interpreted either as authorizing gifts of real property or as a general term that did not expand the attorney-in-fact's powers beyond transfers for consideration.

If a contract provision is ambiguous, the intent of the parties becomes a question for the trier of fact. *United Ry. Supply v. Boston & Maine Corp.*, 148 Vt. 454, 457, 535 A.2d 325, 327 (1987). Extrinsic evidence may be relied upon to construe the instrument, without running afoul of the parol evidence rule. *Breslauer v. Fayston Sch. Dist.*, 163 Vt. 416, 425, 659 A.2d 1129, 1135 (1995). *See also King v. Bankerd*, 492 A.2d at 612–13 (intent of parties may be determined by examination of facts and circumstances surrounding execution of general power of attorney); *DeBueno v. Castro*, 543 So.2d 393, 394 (Fla.Dist.Ct.App.1989) (extrinsic evidence admissible to show that power to convey authorized transfer without consideration for estate planning purposes). The Government contends, however, that the Estate is unable to produce admissible parol evidence of its decedent's intent, because any communications are inadmissible under the relevance and hearsay rules, and the dead man's statutes, Vt. Stat. Ann. tit. 12, § 1602–1603 (1973).

The dead man's statutes were created as exceptions to the broad common law rule that disqualified interested parties from testifying in their own favor, and are thus intended to allow the admission of otherwise inadmissible evidence rather than to create rules of disqualification. *In re Estate of Farr*, 150 Vt. 196, 199, 552 A.2d 387, 390 (1988). Section 1602 provides that "[a] party shall not be allowed to testify in his own

favor where the other party to the contract or cause of action in issue and on trial is dead ...." Section 1603 provides that "[w]hen an executor or administrator is a party, the other party shall not be permitted to testify in his own favor ...." Both sections contain exceptions to this disqualification, none of which apply to the circumstances of this case.

■■■■■ The dead man's statutes do not disqualify Smith III from testifying as to the nature and extent of his agency. An agent is a competent witness, either for or against a principal, to prove his acts done and contracts made as agent, and to prove his agency. *Lytle v. Bond's Estate*, 40 Vt. 618, 622 (1868); *Gifford v. Thomas' Estate*, 62 Vt. 34, 35, 19 A. 1088 (1890). The dead man's statutes provide that a survivor who is a party to the contract or cause of action in issue and on trial may not testify in his or her own favor. The agent in this case would not be testifying in his own favor, but on behalf of the estate of his principal. Furthermore, the estate and the agent in this case are parties on the same side of the controversy. The dead man's statutes were designed to protect decedents or estates from adverse parties, not to bar testimony presented on behalf of estates. *See* 3 Jack B. Weinstein, et al., Weinstein's Evidence ¶ 601[03] (1996); McCormick on Evidence § 65 (Edward W. Cleary, ed., 3rd ed.1984).

■■■■ In any event, the Government has waived reliance on the dead man's statutes. In support of its Motion for Summary Judgment, the Government submitted the deposition testimony of Smith III, claiming that if the Court found it necessary to examine the facts and circumstances surrounding the granting of the power of attorney, Smith III's testimony indicated that the power of attorney was intended only to enable him to handle his father's day to day financial affairs, because of his father's increasingly poor health.

■■■■ Vermont adheres to a broad waiver rule. If an adverse party acts inconsistently with the disqualification at any stage of a proceeding, waiver will be found. *In re Farr*, 150 Vt. at 199, 552 A.2d at 390. *See also Abbiati v. Buttura & Sons, Inc.*, 161

Vt. 314, 322, 639 A.2d 988, 992–93 (1994). Waiver can occur because the disqualified party is allowed to testify in his or her own favor, or because the adverse party calls the disqualified party and inquires about the issue, or where the adverse party cross-examines the disqualified party. *In re Farr*, 150 Vt. at 199, 552 A.2d at 390.

The Government took the deposition of Smith III on July 2, 1996. At the deposition, the Government inquired at length about conversations that Smith III had with his father concerning the power of attorney, and his father's desire to prevent the property from being developed. In its Motion for Summary Judgment, the Government cited portions of the deposition testimony, and it attached the entire deposition to its memorandum as exhibit 2. Mot. for Summ. J. at 16–17 (paper 20).

■■■■ Simply taking a deposition will not trigger a waiver of the protection of the dead man's statutes, given the broad scope of allowable discovery inquiry, which includes the discovery of inadmissible information. However, once a party submits the deposition to the court in support of its summary judgment motion, the party is asking the court to treat the discovered information as evidence. By relying on portions of Smith III's deposition, in which he discussed conversations with his father, in support of its contention that the father did not intend to bestow upon his son the power to donate an interest in the farm, the Government has waived the benefit of the dead man's statutes. *See, e.g., Taylor v. Taylor*, 643 N.E.2d 893, 895 (Ind.1994) (deposition submitted in support of summary judgment motion waives protection of dead man's statute).

## IV. *Conclusion*

Because the power of attorney is ambiguous as a matter of law, and the intent of the principal is a material fact in dispute, summary judgment is inappropriate. Extrinsic evidence will be admitted to construe the instrument. Relevancy or hearsay objections to specific testimony may be raised by motions in limine or orally at trial, and will be addressed at that time. The Government's

and the Estate's Motions for Summary Judgment (papers 20 and 24) are hereby denied.