# Georgianne Abbiati v. Buttura & Sons, Inc. and American Bankers Life Assurance Company of Florida

[639 A.2d 988]

No. 92-612

Present: **Allen, C.J., Dooley, Morse and Johnson, JJ.**

Opinion Filed January 31, 1994

*George E. Rice* and *Joseph G. McHale* of *Goodrich & Rice*, Montpelier, for Plaintiff-Appellant.

*Richard E. Davis* and *Jonathan P. Cawley* of *Richard E. Davis Associates*, Barre, for Defendant-Appellee Buttura & Sons.

*Jeffry W. White* of *Eaton & Hayes, P.C.*, Woodstock, and *John Davis Buckley* (On the Brief) of *Theriault & Joslin, P.C.*, Montpelier, for Defendant-Appellee American Bankers Life Assurance Co.

**Dooley, J.** Plaintiff sued defendants, Buttura & Sons, Inc., and its life insurance carrier, American Bankers Life Assurance Company of Florida, to recover additional compensation on a life insurance policy provided to her deceased husband, Stuart Abbiati, by Buttura & Sons, as part of his employee benefits package. The trial court awarded plaintiff $11,000 additional compensation and held defendants jointly and severally liable for this amount. The court also awarded plaintiff postjudgment interest on the $11,000, but tolled the accrual of interest at the twelve percent rate prescribed by 9 V.S.A. § 41a(a) as of the date of entry of judgment. The court then ordered that the judgment amount be placed in an interest-bearing account to earn interest at the market rate until distribution. Plaintiff appeals the amount of additional compensation awarded and the tolling of statutory interest; American Bankers cross-appeals on the issue of joint and several liability for the additional compensation and the denial of costs on its offer of judgment. We affirm the award of additional compensation and the imposition of liability upon American Bankers. We reverse the court's denial of costs to American Bankers and remand for a determination of such costs. Finally, the Court has divided on plaintiff's

challenge to the order denying her postjudgment interest at the statutory rate as long as American Bankers pays the judgment amount into an interest-bearing account for distribution after the appeal. This issue remains unresolved and must be reargued.

Stuart Abbiati worked for defendant Buttura & Sons as an estimator and granite salesman for a number of years. He was paid a salary for his work as an estimator, but he received commissions for his work as a salesman. Buttura & Sons purchased group life insurance coverage for its employees, including Stuart Abbiati, from American Bankers. The coverage was provided to the employees as a benefit on a noncontributory basis. The policy required Buttura & Sons to pay $0.42 per month per $1,000 of coverage for each employee for life insurance coverage of "2½ times basic annual earnings rounded to the next higher $1,000 to a maximum of $100,000." Buttura & Sons implemented this provision by basing benefits, and its premium payments, upon the basic salary of all nonunion employees, including those workers who also received commission income. Stuart Abbiati was informed of the scope of the benefit in 1985, when the policy was first purchased, and signed an enrollment card listing only his basic salary.

American Bankers provided Buttura & Sons a "Policyholder's Administration Manual" to explain its duties in administering the group policy. As the trial court found, Buttura & Sons was required to perform various administrative tasks including "billing, conversion of coverage, termination of coverage, submission of claims and updated employee census data, including changes in employee annual salaries." It was the policy of American Bankers to request from the employer an annual update of the names and wages of employees. This was done in 1986, and Buttura & Sons responded with current information. The trial court was unable to determine whether it was done in 1987 and 1988. In any event, Buttura & Sons did not update information in those years so that when Stuart Abbiati died in October 1988, the amount of his annual earnings, as shown in the records of American Bankers, was $20,280 when in fact his annual salary was $24,700.

The salary discrepancy underlies some of the issues in this litigation. American Bankers paid plaintiff's death claim based

on the 1986 information and refused to pay the additional amount to reflect Stuart Abbiati's 1988 salary. More significant in monetary terms is plaintiff's argument that the death benefit payment also should have reflected Abbiati's annual commission income, which was around $20,000 at the date of his death.

Plaintiff filed suit for the maximum payment allowed under the policy, $100,000, minus the amount paid of $51,000, for a claim of $49,000. On March 9, 1992, American Bankers served plaintiff with an offer of judgment pursuant to V.R.C.P. 68, in which it proposed to pay $11,000 plus prejudgment interest. The offer was not accepted within ten days and thus was deemed withdrawn. See V.R.C.P. 68.

After a bench trial, the court found that Buttura & Sons incorrectly reported Mr. Abbiati's final salary to American Bankers. As a result, the court awarded plaintiff an additional $11,000, which represented the difference between a death benefit of $62,000 due based on Abbiati's $24,700 salary and the $51,000 previously tendered by American Bankers. The court rejected plaintiff's contention that commission income was to be included in calculation of an employee's salary.

The court held defendants jointly and severally liable for the additional $11,000 on the ground that Buttura & Sons was American Bankers' agent for administrative work, such as reporting premiums. The court also awarded plaintiff interest at the statutory rate of twelve percent on the $11,000 from Stuart Abbiati's date of death. The interest award was subsequently modified to market rate interest on motion of American Bankers.

## I.

Plaintiff first argues that she was entitled to the policy maximum of $100,000 based on two-and-one-half times her husband's total annual earnings, including commissions, in excess of $40,000. Her contention is based on the wording of the benefit provision of the life insurance policy issued by American Bankers to Buttura & Sons: "2½ x basic annual earnings rounded to the next higher $1,000 to a maximum of $100,000." She argues that the policy bases benefits on "earnings" not "salary," and therefore, her benefits should reflect her husband's commission income.

The trial court rejected plaintiff's argument because it found the argument inconsistent with the contractual relationships of the parties. It concluded that under the policy between American Bankers and Buttura & Sons, it was up to Buttura & Sons to define earnings and to pay premiums and obtain coverage accordingly. As to the employees, including Stuart Abbiati, the court concluded that Buttura & Sons agreed to provide coverage based on salary and not commissions.

■ The trial court's findings of fact will be upheld unless clearly erroneous. V.R.C.P. 52(a)(2). Similarly, conclusions will be upheld if supported by the findings. See *In re M.M.*, 159 Vt. 517, 522, 621 A.2d 1276, 1279 (1993). We find the trial court's conclusions amply supported by its findings which are, in turn, supported by the evidence.

At the outset, we agree with the trial court's characterization of the contractual relationships. A group insurance contract is primarily a contract between the employer and the insurer. See, e.g., *Blue Cross-Blue Shield of Ala. v. Fowler*, 195 So. 2d 910, 918 (Ala. Ct. App. 1966); *Blaylock v. Prudential Ins. Co. of America*, 67 S.E.2d 173, 175 (Ga. Ct. App. 1951); *Credeur v. Continental Assurance Co.*, 502 So. 2d 214, 219 (La. Ct. App. 1987); *Guardian Life Ins. Co. of America v. Zerance*, 479 A.2d 949, 952 (Pa. 1984); *Paul v. Insurance Co. of N. Am.*, 675 S.W.2d 481, 483 (Tenn. Ct. App. 1984). Moving beyond the primary contract, some courts have held that there is a contractual relationship between the insured employees and the insurer, often created when the employee contributes to premium payment. See, e.g., *Morris v. Travelers Ins. Co.*, 546 S.W.2d 477, 484–85 (Mo. Ct. App. 1976) (rejecting theory of insureds as third party beneficiaries of employer-insurer contract and finding contract between insurer and employee); *Paul*, 675 S.W.2d at 483 ("When employees contribute part of the premium and are issued a certificate by the insurer, there is also a contractual relationship between the employee and the insurer."). We do not have to decide whether we would accept this view because we adopt the holding of *Watson v. Pilot Life Insurance Co.*, 741 S.W.2d 342, 343–44 (Tenn. Ct. App. 1987): "[W]here a group insurance policy is non-participatory, in that the employee contributes nothing to the payment of the premiums, no contractual relationship arises between the employee and the insurer."

Buttura & Son's group life plan is noncontributory, and there was no direct contractual relationship between American Bankers and Stuart Abbiati.

■ In construing the insurance contract between Buttura & Sons and American Bankers, we seek to effectuate the intention of the parties. See *Cooperative Fire Ins. Ass'n of Vt. v. Gray*, 157 Vt. 380, 383, 599 A.2d 360, 362 (1991) (insurance contracts interpreted according to evident intent of parties). Intent of the parties is often discerned directly from the contract language. *Id.* Here, however, the trial court found that the term "earnings" was ambiguous, and was intended to give Buttura & Sons flexibility in determining the amount of coverage. In light of this ambiguity, the court was well within its power to refer to evidence outside the four corners of the document to help interpret the language of the contract. See *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84–85 (1988) (if ambiguity found in contract, "court may then rely on subordinate rules of construction in order to interpret the meaning of the disputed term[]"). The court could and did consider the circumstances under which the American Bankers policy arose, and the history of the coverage it provided employees. See *id.* at 580, 556 A.2d at 85. It could also consider the way the policy was administered from its inception. Based on all the evidence, the court concluded that the only requirement of the policy was that earnings be defined consistently for determining premiums and coverage so that American Bankers would be paid for the coverage it assumed. We see no reason to disturb the court's conclusion that the policy did not require payment of claims based on commission income.

■ Although there is no insured-insurer contract in this case, the trial court also considered whether Stuart Abbiati and Buttura & Sons formed a separate contract under which commissions would be included in the death benefit calculation. See *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 470 (Mo. Ct. App. 1986) (holding that coverage offered by self-insured employer constituted bilateral contract, not group insurance contract, in which insurance was quid pro quo for employment performance); *Bushman v. Pure Plant Food Int'l, Ltd.*, 330 N.W.2d 762, 766–67 (S.D. 1983) (benefit plan for all employees

is part of employment contract between employer and employee). Again, the court's conclusion that there was no such contract is amply supported by the evidence. Stuart Abbiati's own actions make it clear that there was no separate contract. When he enrolled in the American Bankers' life insurance program, he listed his annual salary as $14,560 and did not include his commissions, which in 1984 totaled over $20,000, on his enrollment form. This action followed an explanation by an American Bankers' insurance agent, Michael Calevro, that the life insurance benefit was based on basic annual salary not including commissions.

Plaintiff has three subsidiary complaints about the evidence the trial court relied upon to reach its conclusion. She asserts that the court was in error in considering Buttura & Sons' prior life insurance contract with Phoenix Mutual Life to aid its interpretation of the American Bankers contract at issue. As of January 1, 1985, Buttura & Sons replaced the Phoenix Mutual policy with the American Bankers contract with the understanding that American Bankers would provide the same benefits as the former arrangement. Under the Phoenix Mutual contract, the life insurance benefit was calculated on the basis of basic salary, and commissions were not included. This evidence was relevant in determining the intention of the parties in entering into the American Bankers contract.

We also reject plaintiff's argument that the trial court was in error in considering a 1988 policy endorsement from the Buttura & Sons-American Bankers insurance contract that was never entered into evidence. Apparently, the endorsement clearly specified that coverage was based on salary, and Stuart Abbiati received a copy of it. The endorsement was presented to the court in support of American Bankers' motion for summary judgment, and is in the court file, but American Bankers failed to offer it at trial.

■ Plaintiff is correct that a court may not consider evidence outside of that introduced at trial. See *Marble Bank v. Heaton*, 160 Vt. 188, 193, 624 A.2d 365, 368 (1993). A nonessential erroneous finding is not, however, grounds for reversal. *Brown v. Brown*, 154 Vt. 625, 633, 580 A.2d 975, 980 (1990). The finding about the endorsement is not mentioned in the conclusions, and is not necessary to them. Any error is harmless. See

V.R.C.P. 61; *Bloomer v. Weber,* 149 Vt. 187, 190, 542 A.2d 258, 260 (1988) (reversal necessary only when error complained of results in undue prejudice, not when harmless).

Plaintiff also challenges testimony given by Michael Calevro, an insurance agent for American Bankers, and Michael Brent Buttura, an owner of Buttura & Sons, claiming that certain parts of their respective testimony should have been excluded under the Dead Man's statute, 12 V.S.A. § 1602.[1] At trial, plaintiff objected to two parts of Calevro testimony concerning conversations Calevro had with Stuart Abbiati as part of Calevro's explanation of the changeover from the Phoenix Mutual policy to the American Bankers policy: (1) Calevro's reporting of Abbiati's statement that his salary reported for the purpose of calculating his pension benefits was generous; and (2) Calevro's testimony that he explained that the pension benefit was based on salary alone, not salary plus commissions. These statements were elicited by defendant Buttura & Sons' counsel in an attempt to show a common pattern of excluding commission from pension and life insurance benefits. Plaintiff also objected to testimony by Michael Brent Buttura concerning: (1) whether Abbiati ever complained about the fact that his salary was reported to the Internal Revenue Service on a W-2 statement, while his commissions were reported on a Form 1099; and (2) Buttura's statement to Abbiati that life insurance coverage "was a fringe, that the company was paying it 100 percent and we always did it and kept the same with everybody on their wages."

The issue was also raised by plaintiff in a pretrial motion in limine to exclude "any testimony offered by either defendant in regard to the alleged understandings of plaintiff's deceased husband regarding his coverage." Apparently, the motion was never ruled on although we do not know whether there were any discussions of it with the court because we have no transcript of pretrial hearings. In any event, plaintiff does not claim error from the failure to rule on the motion.

---

[1] Section 1602 provides in relevant part: "A party shall not be allowed to testify in his own favor where the other party to the contract or cause of action in issue and on trial is dead . . . ."

■  We need not reach the merits of the plaintiff's § 1602 claim because we conclude that she waived it. We discussed waiver of Dead Man's statute claims in detail in *In re Estate of Farr*, in which we stated:

> [W]e have recognized a broad waiver rule. Thus, where the beneficiary of the disqualification . . . acts inconsistently with the statutory disqualification, the disqualification is waived. . . . Waiver can occur because the disqualified party is allowed to testify in his own favor to the contract or cause of action in issue without objection by the adverse party. . . . Similarly, it can occur because the adverse party calls the disqualified party and inquires about the contract or cause in issue or, in certain circumstances, where the adverse party cross-examines the disqualified party. . . . We have insisted that the adverse party act consistently with the disqualification at all stages of the proceeding to avoid a finding of waiver.

150 Vt. 196, 199, 552 A.2d 387, 390 (1988) (citations omitted). In *Farr*, we found a waiver based on a number of actions including the action of the party seeking to invoke the statute in allowing the witness in question to testify to the existence of the contractual claim. *Id.* at 201, 552 A.2d at 391–92. We quoted from *Comstock's Adm'r v. Jacobs*, 89 Vt. 133, 138, 94 A. 497, 499 (1915), that " '[the party invoking the statute] could keep the door shut, if he chose to do so; but he could not open it, so far or so long as suited his own purposes, and then close it.' " *Farr*, 150 Vt. at 201, 552 A.2d at 391.

Plaintiff's actions here are similar to those of the party invoking the statute in *Farr* or *Comstock*. Plaintiff called both Michael Brent Buttura and Michael Calevro in her main case and explored the alleged contract between Buttura & Sons and Stuart Abbiati and other employees of the company. For example, in response to questions from plaintiff's counsel, Michael Calevro described how he discussed individually with each employee in 1984 the benefits available under the American Bankers insurance policy. Having opened the door, plaintiff was in no position to shut it when examination of these witnesses by other parties went into details harmful to plaintiff's case. By that time, plaintiff had waived any objection under the Dead Man's statute to testimony by Calevro and Buttura.

## II.

On cross-appeal, defendant American Bankers contends that the trial court erred in finding that it was jointly and severally liable with defendant Buttura & Sons for the $11,000 additional benefit amount.[2] The trial court found American Bankers liable for this amount because it concluded "that Buttura was an agent acting for American Bankers because it was required to file reports, remit premiums, prepare census forms, and perform other necessary administrative work pursuànt to American Bankers' policy and its Administrative Manual." The trial court relied on this Court's decision in *Rule v. New Hampshire-Vermont Health Service,* 144 Vt. 323, 477 A.2d 622 (1984), in support of its conclusion. American Bankers argues that *Rule* is inapposite because the holding was based on a negligence theory, and not a contract claim as the plaintiff has brought here, and because of differences in the role of the "agent." We find American Bankers' distinctions to be without merit.

In *Rule,* plaintiffs joined a trade association of gasoline service stations, in part to participate in a group health insurance program offered by defendant New Hampshire-Vermont Health Service. *Id.* at 325, 477 A.2d at 623. The association bore the responsibility for collecting plaintiffs' quarterly premiums and remitting them to defendant. *Id.* at 325–26, 477 A.2d at 623. The association failed to pay premiums to defendant, and defendant cancelled the insurance plan. *Id.* at 326, 477 A.2d at 623. Plaintiffs then sued defendant for a premium refund, and we upheld the imposition of liability upon defendant. *Id.* at 327, 477 A.2d at 624.

We held that an agency relationship can be "demonstrated from the circumstances of the particular situation, or the conduct of the parties," and must be determined on the facts of each case. *Id.* at 326, 477 A.2d at 624; see also *Kirkpatrick v. Boston Mut. Life Ins. Co.,* 473 N.E.2d 173, 177

---

[2] In its reply brief to the brief of American Bankers, Buttura & Sons argued that the court erred in finding it jointly and severally liable with American Bankers for the $11,000 underpayment. Buttura did not file a timely cross-appeal and, therefore, may not challenge the judgment against it. See *Baird v. Baird,* 142 Vt. 115, 117, 454 A.2d 1229, 1230 (1982). We have not considered Buttura's argument.

(Mass. 1985) (whether employer is insurer's agent is factual question to be decided on case-by-case basis). In the context of an insurer-policyholder relationship, an agency relationship can be founded upon the policyholder's performance of administrative tasks on behalf of the insurer. *Rule*, 144 Vt. at 326–27, 477 A.2d at 624; see also *Clements v. Continental Casualty Ins.* Co., 730 F. Supp. 1120, 1123 (N.D. Ga. 1989) ("Georgia courts have held consistently that 'the employer who obtains a group insurance policy covering its employees is the agent of the insurance company for every purpose necessary to make effective the group policy, and thus the insurance company has imputed knowledge of facts which the employer knows.'") (quoting *Dawes Mining Co. v. Callahan,* 272 S.E.2d 267, 269 (Ga. 1980)); *Elfstrom v. New York Life Ins. Co.,* 432 P.2d 731, 737, 63 Cal. Rptr. 35, 41 (1967) (employer is agent of insurer in matters of policy administration); *Paulson v. Western Life Ins. Co.,* 636 P.2d 935, 942–43 (Or. 1981) (if employer charged with administrative functions commonly performed by insurer, employer is insurer's agent for those purposes).

We found in *Rule* that the trial court's findings supported its conclusion that the association was the agent of defendant with respect to handling premiums. 144 Vt. at 326, 477 A.2d at 624. We noted that without the association's assistance, defendant would have had to handle the premiums itself. *Id.* at 327, 477 A.2d at 624. We reasoned that imposition of liability on the insurer for employer or group trustee error in administration places liability on the party with the greater ability to control the function involved. *Id.*; see also *Elfstrom,* 432 P.2d at 737, 63 Cal. Rptr. at 41 (discussing reasoning of cases imposing liability on insurer for employer error given that insurer receives substantial benefit from employer administration, while employees have no knowledge or control over administrative acts).

This case is similar to *Rule* because determining correct salary amounts was one of a number of administrative functions specifically delegated to Buttura & Sons by American Bankers. See also *Kirkpatrick,* 473 N.E.2d at 177 (among key criteria determining whether employer is insurer's agent is "whether the task is expressly delegated to the employer by the insurer"). American Bankers thus saved itself the time and expense of dealing directly with the employees for premium

information and other policy administration. The fact that *Rule* is about premium administration and this case is about determining information upon which premiums and claims are based is a distinction without a determinative difference.

Because of the agency relationship with respect to salary information, American Bankers must bear the responsibility for Buttura & Sons' failure to perform its delegated duties. See *Larr v. Minnesota Mutual Life Ins. Co.*, 924 F.2d 65, 66 (5th Cir. 1991) (insurer bound by waiver of termination made by credit union as credit union was insurer's agent for purposes of accepting insurance application and collecting premiums); *Bass v. John Hancock Mutual Life Ins. Co.*, 518 P.2d 1147, 1150, 112 Cal. Rptr. 195, 198 (1974) ("[W]e have held that the employer is the agent of the insurer in performing the duties of administering group insurance policies . . . and that accordingly the insurer shares responsibility for the employer's mistakes."). American Bankers' liability as a principal does not depend upon whether plaintiff's theory of recovery is based on contract or tort.

### III.

On cross-appeal, defendant American Bankers also claims that the trial court erred in denying its motion for costs under V.R.C.P. 68, based on the offer of judgment it filed, because the judgment obtained by plaintiff was not more favorable than the offer. Trial in this case was originally scheduled to begin on March 11, 1991. American Bankers served its offer of judgment on March 5, 1991, and contemporaneously moved the court to permit the offer of judgment out of time because the offer was made within ten days of the scheduled trial date. The trial was delayed by flooding in Montpelier and rescheduled to April 15. The court never ruled on the motion to allow the filing of the offer out of time and denied American Bankers' motion for costs because the offer was not filed more than 10 days before the scheduled trial date.

Civil Rule 68 provides that if an offer of judgment is made "[a]t any time more than 10 days before the trial begins," an offeree will be liable for costs incurred after the offer "[i]f the judgment finally obtained by the offeree is not more favor-

able than the offer" of judgment. For two reasons, we believe the court's ruling was error. First, the plain language of the rule makes timely an offer of judgment served more than ten days before the trial "begins," irrespective of when the trial "would have begun" but for the continuance. We interpret it in line with its plain meaning. See *Loy v. Leone*, 546 So. 2d 1187, 1188–89 (Fla. Dist. Ct. App. 1989) (interpreting virtually identical Florida rule); *Gilbert v. City of Caldwell*, 732 P.2d 355, 367–68 (Idaho Ct. App. 1987) (interpreting virtually identical Idaho rule). The trial here began over ten days after the offer was served.

Second, the rule is remedial and should be construed consistent with its purpose of facilitating settlements. As one court reasoned:

> Since a late settlement that avoids some of the trial costs would seem to be better than no settlement at all, the policy of the Rule would appear best served by selecting the last possible point in time for cutting off Rule 68 offers.

*Greenwood v. Stevenson*, 88 F.R.D. 225, 228 (D.R.I. 1980) (deciding under Fed. R. Civ. P. 68, substantially similar to V.R.C.P. 68, that offer of judgment made fifty days after jury impanelled, but more than ten days prior to commencement of trial proceedings, timely made under Rule 68). It is consistent with this policy to give effect to the offer of judgment in this case. See *Gilbert*, 732 P.2d at 367–68. For whatever reason, plaintiff had far longer than the ten days the rule allows to respond to the offer of judgment. As long as she had this opportunity, we should not undercut the rule by allowing her to ignore the offer.

The exact issue before us arose in *Gilbert v. City of Caldwell*, based on an Idaho rule with relevant language identical to ours. Relying on the plain meaning of the rule, and the policy behind it, the Idaho Court of Appeals held that the timeliness of the offer is determined by the actual date of trial and not the date trial was originally scheduled. *Id.* We find the decision well reasoned and follow it.

Because the judgment was not more favorable to plaintiff than the offer, plaintiff "must pay the costs incurred after the making of the offer." V.R.C.P. 68. We remand to the superior court to determine those costs.

## IV.

Finally, because of the disqualification of one member of the Court, only four Justices sat on this case. The Court has divided on plaintiff's challenge to the order denying her postjudgment interest at the statutory rate as long as American Bankers pays the judgment amount into an interest-bearing account for distribution after the appeal. Accordingly, this issue is not resolved by the current mandate and must be reargued before a full court, including a substitute for the disqualified Justice.

During the course of research for this opinion, the Court has determined that the trial court's action with respect to the placement of the judgment in an interest-bearing account may be authorized by V.R.C.P. 67. The applicability of the rule was not raised by any party in the briefs before the Court. To facilitate decision-making, the Court is requesting the parties to submit supplemental briefs on the applicability of V.R.C.P. 67 to the postjudgment interest issue and the trial court order to place the judgment amount in an interest-bearing account. The unresolved issue will be reheard at the February Term of the Court. The parties are directed to appear before the Court's staff attorney, at a time determined by him, for purposes of establishing a supplemental briefing schedule.

*The judgment award of $11,000 against both defendants is affirmed. The denial of costs to defendant American Bankers associated with its offer of judgment is reversed and remanded for a determination of such costs.*