**In re Appeal of Sandra Dooley, et al.**
**In re Appeal of Scannel, et al.**
**In re Appeal of Timberlake Associates**

[742 A.2d 761]

No. 98-093

Present: **Barney, C.J. (Ret.), Underwood, J. (Ret.), Meaker and Maloney, Supr. JJ. (Ret.), and Fisher, D.J. (Ret.), Specially Assigned**

Opinion Filed November 5, 1999

*John L. Franco, Jr.*, Burlington, for Appellants.

*Marc B. Heath* and *William W. Schroeder* of *Downs Rachlin & Martin, PLLC*, Burlington, for Appellee.

**Per Curiam.** The appellants are challenging the decision of the Environmental Court allowing construction of a gas station-convenience store of the "mini-mart" type on what formerly was the site of a branch bank facility. That operation had been carried on from a modified residence and, at the time of sale to Timberlake, had reduced to being merely an ATM site, operating twenty-four hours.

The property is located on the south side of Williston Road just east of the East Terrace/Spear Street entrance to Williston Road at the point where that South Burlington road crosses the city line and becomes the City of Burlington's Main Street. Easterly of the property are commercial locations, including a Staples shopping plaza and a gasoline station, and then the I-89 interchange with Williston Road (U.S. Route 2). There are also residences adjacent to the south. Across Williston Road, opposite the northwesterly edge of the property and the Spear Street intersection is the entrance of the so-called "jug-handle" for north-turning Route 2 traffic.

The property lies entirely within the City of South Burlington. It is zoned "Commercial 1" and is within Zone One of the City's "Traffic Overlay Zone." The proposed gas station-convenience store is a conditional use in that zone, requiring review and approval by the city zoning board of adjustment for compliance with the zoning conditional use standards. Since it is a nonresidential project, the site plan proposal requires approval by the planning commission as well.

Generally, the installation proposed involves the demolition of the existing residential bank building and the construction of a 900 square foot convenience store facility to the rear of the lot, fronted by a gasoline island of three fueling positions under a canopy. The plan includes access drives, pedestrian walkways, paved parking, lighting and landscaping. Building heights, design and conformity to environmental requirements, side-yard and front set-back distances, as well as the impact on adjoining property, are all part of the design requirements.

A proposal was duly submitted to the zoning board of adjustment. With some revisions in details the proposal was approved and taken to the planning commission. That body generally approved the site plan with the exception of the location and number of curb cuts for vehicular access. The zoning board had required as a condition of

approval a two-way driveway onto Williston Road and an incoming-only entrance from Spear Street. The planning commission approval was conditioned on the Williston Road entrance being a right-turn, east-bound entrance only access, with in and out access on Spear Street.

The applicants then returned to the zoning board with the alterations made by the planning commission. The zoning board did not accept the planning commission's version and required the Spear Street access to be entrance only, with "controlled dual access" from Williston Road. This was unacceptable to the planning commission, and when the applicants presented it, the planning commission denied site plan approval.

Faced with that impasse, the applicants took their case, by de novo appeal, to the Environmental Court, a tribunal authorized to review the issues before both bodies and resolve them. After hearings and findings, that court approved the proposal before us, modifying the basic proposal in some particulars, and authorized the project. We affirm.

The opponents' appeal to this Court specifically challenges two of the dimensional issues and the provisions intended for traffic control, both foot and vehicular, in the conditional use proposal developed from the evidence by the trial court. The scope of the appeal was the subject of several motions by all parties, seeking to define the validly contested issues and perhaps to bring them into closer focus. With challenges to some issues as not properly raised or preserved, and a motion from the applicants for partial summary judgment all presented below, the trial court annotated its decision and order as follows: "The court will review in the present appeal any aspects of the conditional use approval which differ from the project approved in the 1995 application. Any aspects which are unchanged, such as the 24-hour operation, are not within the scope of this appeal as the 1995 approval was not appealed."

■ The first issue raised is a challenge to the fifty-foot set-back proposed for the canopy over the fueling stations. The fifty-foot set-back was approved in the 1995 application. Although subsequent proposals decreased the size of the canopy, nothing in the evidence suggests it was ever moved toward the street line. It might well be assumed that the size reduction, if anything, increased the set-back dimension. Nowhere in these proceedings is there any indication that either the zoning board or the planning commission found any

shortcoming in this particular dimension, and the lower court was fully justified in sustaining compliance.

The second dimensional issue, raised by the appellants for the first time here, seems to be that the proposal does not take into account Article 25.101 of the South Burlington zoning regulations. That article calls for a fifty-foot front yard set-back from the edge of the "planned" right-of-way of Williston Road. Nothing in the evidence places the southerly on-the-ground location anywhere but where it was shown on the plot plan and accepted by the planning and zoning bodies. No representation by any authority speaking for the City of South Burlington has suggested any defect in the placing of the right-of-way as the proposal does. We are left without evidentiary guidance as to a different place for its claimed true location. Perhaps the width has already been incorporated into Williston Road, possibly all on the north side, or perhaps divided by some unknown measure between the north and south sides. This late-in-the-day challenge may raise intriguing speculation, but it must be said that there has been no challenge of substance questioning the determination that the Williston Road southerly right-of-way boundary is exactly where the plot plan put it and the commission, board and trial court accepted it. No reversible error appears here. See *Abbiati v. Buttura & Sons, Inc.*, 161 Vt. 314, 318, 639 A.2d 988, 990 (1994).

Traffic flow is the concern of the third issue. The conditional use approved in 1995 provided for a two-way access onto Williston Road. This access was 220 feet from the Spear Street intersection measured along the property line from the nearest edge of the driveway to the closest point of the intersection. Under § 23.103(d) of the zoning ordinance, driveways are to be located at least 200 feet from signalized street intersections (of which the Spear Street intersection is one), measured "between the near edges of the driveway and the intersection."

It is the contention of the appellants that this measurement should be made from the edge of the flare of the driveway where it meets the east-bound travel lane of the street. This yields a separation distance of some 170 feet along the curb line. Rectification could come from requiring a 90° turn into the property from Williston Road, unsafe traffic-wise though that might seem to be. However, measuring along the property line of the approved proposal still gives a separation distance of 210 feet, as demonstrated by the exhibit. The appellants acknowledge that the ordinance gives no guidance for the proper course of measurement. However, evidence in the case stands uncon-

troverted that such measurements have been customarily made along the line of ownership by the South Burlington authorities. This practice weighs heavily in favor of the trial court's adoption of that regulatory interpretation. See *In re Duncan*, 155 Vt. 402, 408, 584 A.2d 1140, 1144 (1990).

Indeed, how can the measurement responsibility be fairly imposed on the property owner beyond his property boundary when his control ends at the line of ownership? Use, design and construction on the right-of-way itself is totally subject to the control of the appropriate municipal agencies, even though the property owner may be required to bear construction expense. Nothing developed by the appellants demonstrates any error in the determination of compliance with the distance to the signalized intersection.

■ As the trial court determined, on Spear Street the curb cut, although within the 200 foot distance, was "grandfathered" because it is located within the area of a previous cut dating back to the bank usage. The new proposal entirely eliminated an automobile access drive on Spear Street even closer to the intersection. Thus, the lineal measurements of the proposed curb cuts of the proposal as delineated by the court below are properly within the regulatory limits.

Further relating to the issue of traffic control is the presence of high volume traffic on Williston Road. On this account it is here subject to the Traffic Overlay Zone 1 requirements for dealing with potential traffic burdens brought about by the business activity associated with the project. The appellants raise challenges to the trial court's disposition of traffic control issues raised in connection with the proposed plan.

The Traffic Overlay Zone sets maximum peak hour volumes for burdened street and intersection areas. The zone involved here sets a limit of 29/30 trips serving the property. These are called vehicle trip ends and refer to vehicular traffic into and out of the premises to make use of the facility. Since this is a preexisting business lot (former drive-through bank depository and ATM location), § 21.50 of the zoning regulations permits approval of peak hour traffic volume above normal standards. That permission is conditioned upon establishing that the proposed use will not increase peak hour volumes generated by the previous use, or, if it does, other improvements to the site will produce a net benefit for traffic in the area.

The preexisting use as a branch bank facility generated 95 trip ends in the peak hour. However, the evidence also disclosed that the discontinuance of all but the ATM use dropped the "currently

generated" trip ends figure to 21. Testimony developed that the proposed use would enlarge the trip ends generated to 79, less than the old bank use but more than the later 21. This puts the generated peak hour traffic volume above both the 21 trip end and the regulatory limit of 29/30.

A second method of analyzing traffic impact uses something called the "pass-by" rate, using a percentage of the traffic by the premises as a measure of potential trip ends. However, this procedure gives a standard of 17/18 for the bank use against a 27 trip-end for the proposed use, facing the proponents again with an overage. Confronted with this circumstance, the trial court analyzed the design and improvements in traffic entrances, departures and circulation, plus pedestrian improvements, to see if the test of a "net benefit for traffic in the vicinity," as provided in the regulations, was met.

From the evidence, exhibits and findings in the case, the design of the traffic pattern imposed upon cars entering and leaving the premises in question becomes clear. Ingress and egress from the property is to be confined to an incoming driveway on Spear Street, and an incoming and outgoing driveway on Williston Road. The Spear Street entrance is designed to be available to right-turning traffic north-bound on the easterly side of the street. The entering driveway on Williston Road is accessible only through a right turn available only to east-bound traffic on that road. The associated exit drive directs departing traffic to the right to join any east-bound moving traffic. Additionally, a permanent berm or barrier in Williston Road is designed to prevent left-turning and cross-traffic entry to the property, and to deny exiting traffic left-turning and cross-traffic access to west-bound Williston Road traffic. The allowed movement is analogous to the safety purposes served by on and off ramp designs at interstate interchanges.

Testimony in the case established left-turning, cross-traffic movement as a most dangerous impediment to safe traffic flow, and a cause of accidents. Since the design proposed substantially eliminates this danger previously present, it can only be viewed, as the trial court determined, a significant and "net" benefit to traffic in the vicinity, as the regulations require.

As to any additional traffic generated along Spear Street by this use, the uncontroverted evidence was that, based on the most conservative assumption of burdensome use, there would be merely a fraction of a second increase in traffic delay for that traffic at the Spear Street light. This barely measurable change is insufficient to

change the more significant and already established "net traffic benefit."

■ Beyond that, recognition must be given to the design improvements relating to pedestrian safe access as an overall contribution to traffic safety. A new sidewalk along Spear Street, a pedestrian island at the Williston Road access, internal walkways, landscaping and fencing placed to direct foot traffic to safe areas and restrict random movement are all safety ingredients in the plan. Thus, the safety of both automobile and pedestrian traffic have been significantly advanced.

Outside of the areas specifically challenged in this appeal, the trial court evaluated details of the plan in carrying out its responsibilities to oversee and control property development within the regulations, rather than erect barriers to allowable change. The court examined and adjusted lighting and landscaping, made cosmetic structural alterations to protect vistas appurtenant to neighboring dwellings, and generally reviewed the proposal with an eye to the protection of existing residential uses, even though other older developments had already modified the character of the vicinity.

■ The appellants seek to fault the trial court's extended evaluation of the proposed project for failure to support some partially conclusionary findings undergirding the result with more detailed findings. They would have the matter remanded to put in place more details itemizing the conformity of the existing findings to their view of the zoning requirements. We find no such shortcoming. The findings and conclusions made, so plainly developed from and supported by clear evidence in the case, make this challenge not only unfounded but calling for a wasteful expenditure of time and resources that would not especially improve clarity nor, in any way, change the result. See *Roy v. Mugford*, 161 Vt. 501, 511-12, 642 A.2d 688, 694 (1994).

*Affirmed.*