T.C. Memo. 1996-29


UNITED STATES TAX COURT


ESTATE OF SYLVIA P. GOLDMAN, DECEASED, MARSHA GOLDBERG
AND LINDA TANENBAUM, CO-EXECUTRICES, Petitioner <u>v</u>. COMMISSIONER
OF INTERNAL REVENUE, Respondent


Docket No. 16970-94.                    Filed January 25, 1996.


<u>Gerald N. Daffner</u>, for petitioner.

<u>Marcie B. Harrison</u> and <u>Theodore R. Leighton</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  By notice dated July 11, 1994, respondent
determined a deficiency in petitioner's estate tax in the amount
of $271,031.37 and an accuracy-related penalty for negligence
under section 6662(b)(1) in the amount of $42,763.25.

After concessions, the issues before the Court are as
follows:

1. Whether the value of funds (i.e., $160,000), paid to recipients of sixteen $10,000 checks drawn on the decedent's checking account by her attorney-in-fact, is includable in the gross estate. We hold that it is includable.

2. Whether the value of funds (i.e., $50,000), paid to recipients of two $25,000 checks drawn on the decedent's checking account by her attorney-in-fact, is includable in the gross estate. We hold that it is includable.

3. Whether petitioner is liable for an accuracy-related penalty for negligence in the amount of $42,763.25. We hold that petitioner is liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The Stipulation of Settled Issues and the Stipulation of Facts are incorporated by this reference. All section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

The estate (petitioner) had a mailing address, and the co-executrices resided, in New York, New York, at the time the petition was filed.

Sylvia Goldman (decedent) resided in New York, New York, in the years prior to her death in 1991. Decedent had two children, Marsha Goldberg and Linda Tanenbaum. Marsha was married to Richard Goldberg, and Linda was married to Jay Tanenbaum.

Decedent also had four grandchildren:  Marsha and Richard's children, Caren and Andrew Goldberg; and Linda and Jay's children, Steven and Susan Tanenbaum.

In the fall of 1989, decedent was diagnosed with breast cancer.  On November 1, 1989, decedent executed a Citibank Consumer Power of Attorney, exercisable by Marsha and/or Linda. This document was a standard form that Citibank provided to customers seeking to give a third party the authority to conduct banking transactions.  It provided in pertinent part:

> I, Sylvia P. Goldman * * * make Linda G. Tanenbaum
> * * * [and] Marsha G. Goldberg * * * my legal
> representative (called an "attorney-in-fact", and
> referred to in this document as the "Attorney") to do
> the following business with Citibank, N.A. (the "Bank")
> in my name:
>
>      1. To open and/or operate any one or more deposit
> or other accounts in my name or any other name
> including the name of the Attorney.
>
>      2. To deposit money, checks, notes and other
> instruments for the payment of money; to endorse any of
> these instruments with my name for the purpose of
> cashing or depositing them or paying them to other
> persons, including the Attorney.
>
>      3. To write and sign checks and other instruments
> to be paid by the Bank; to give orders for the
> withdrawal, transfer or other use of money on deposit
> at the Bank or otherwise available to me;
>
> *      *       *       *       *       *        *
>
>      I give my Attorney full authority to do anything
> he or she considers necessary and proper to conduct
> this business with the Bank, even if it is for the
> Attorney's own benefit, as if I were personally doing
> it. * * *

On December 4, 1989, decedent was admitted to Lenox Hill Hospital in New York to have a mastectomy.  The operation was performed on December 5, 1989, and decedent was discharged from the hospital on December 12, 1989.  On November 26, 1990, decedent, suffering from shortness of breath, was again admitted to Lenox Hill Hospital.  Tests revealed a large cancerous mass on her chest wall, and she was discharged from the hospital on November 29, 1990.

From November 26 through December 10, 1990, decedent wrote the following checks drawn on her Citibank account:

| Check Number | Date on Check | Amount | Payee | Memo Notation |
|---|---|---|---|---|
| 2267 | 11/26/90 | $  25.00 | St. Jude Children's Research Hospital | Contribution |
| 2268 | 11/26/90 | 50.00 | Anti-Def. League | Contribution |
| 2269 | 12/26/90 | 25.00 | American Red Cross Greater N.Y. | Contribution |
| 2272 | 11/26/90 | 36.00 | Israel Cancer Research Fund | Contribution |
| 2273 | 11/26/90 | 25.00 | Jewish Guild for Blind | Contribution |
| 2274 | 11/26/90 | 18.00 | American Red Mogan David, Israel | Contribution |
| 2275 | 12/1/90 | 108.00 | A.A.R.P. Health Ins. Program | December, 1990 |
| 2277 | 12/1/90 | 1,482.63 | 215 East 68th St. Co. | Apr. 17- Dec. 1990 |
| 2278 | 12/3/90 | 259.80 | B. Smith & Sons | Invoice 11/29/90 |
| 2279 | 12/3/90 | 125.35 | Tower Chemists | Billing date 11/24/90 |
| 2280 | 12/3/90 | 16.04 | AT&T | Inv. date 11/26/90 |
| 2281 | 12/1/90 | 200.00 | Linda Tanenbaum | -- |
| 2282 | 12/1/90 | 25.00 | Susan H. Tanenbaum | -- |
| 2283 | 12/1/90 | 25.00 | Steven E. Tanenbaum | -- |
| 2284 | 12/1/90 | 200.00 | Marsha Goldberg | -- |
| 2285 | 12/1/90 | 1,200.00 | Cash | -- |
| 2286 | 12/6/90 | 500.00 | Steven Tanenbaum | Happy 21st B |
| 2287 | 12/7/90 | 500.00 | Linda G. Tanenbaum | Happy B |
| 2289 | 12/6/90 | 40.27 | N.Y. Telephone | Due date 12/20/90 |
| 2290 | 12/10/90 | 100.00 | Susan H. Tanenbaum | Happy Chanukah |
| 2291 | 12/10/90 | 100.00 | Caren J. Goldberg | Happy Chanukah |
| 2292 | 12/10/90 | 250.00 | Marsha & Richard Goldberg | Happy Chanukah |
| 2293 | 12/10/90 | 250.00 | Linda & Jay Tanenbaum | Happy Chanukah |
| 2294 | 12/10/90 | 25.00 | Adam R. Roberts | Happy Chanukah |
| 2295 | 12/10/90 | 25.00 | Beth N. Roberts | Happy Chanukah |
| 2296 | 12/10/90 | 100.00 | Andrew N. Goldberg | Happy Chanukah |
| 2297 | 12/10/90 | 100.00 | Steven E. Tanenbaum | Happy Chanukah |
| 2298 | 12/10/90 | 135.45 | Blue Cross Blue Shield | 1/1/91-4/1/91 |

On December 12, 1990, decedent was readmitted to Lenox Hill Hospital, where she remained until her death on January 19, 1991.  Marsha visited decedent regularly.  Linda, however, was preoccupied with caring for her son who had recently undergone a bone marrow transplant.  Thus, she did not spend as much time with decedent.

Decedent's condition slowly worsened.  When she had enough strength, however, she enjoyed getting out of bed and writing checks.  On December 12, 1990, decedent wrote the following checks:

| Check Number | Date on Check | Amount | Payee | Memo Notation |
|---|---|---|---|---|
| 2299 | 12/12/90 | $    800.00 | [illegible] Brokerage Corp. | -- |
| 2300 | 12/12/90 | 18.00 | N.Y. Times | 11/5-12/2/90 |
| 2301 | 12/12/90 | 158.75 | Town Club | Inv. 12/1/90 |
| 2302 | 12/12/90 | 73.54 | Chemical Credit Services | Due 12/31/90 |
| 2303 | 12/12/90 | 1,000.00 | Dr. Victor J. Sendax | Invoice 11/29/90 |
| 2305 | 12/12/90 | 13,520.00 | Georgia Dept. of Revenue | Seymour J. Goldman, Dec'd, Sylvia P. Goldman |
| 2306 | 12/12/90 | 2,100.00 | Gerald N. Daffner | Georgia Tax Exam |

On December 15, 1990, Marsha wrote the following checks:

| Check Number | Date on Check | Amount | Payee | Memo Notation |
|---|---|---|---|---|
| 2425 | 12/15/90 | $10,000 | Steven E. Tanenbaum | Gift |
| 2426 | 12/15/90 | 10,000 | Susan H. Tanenbaum | Gift |
| 2430 | 12/15/90 | 10,000 | Andrew Goldberg Trust | Gift |
| 2433 | 12/15/90 | 10,000 | Richard Goldberg | Gift |
| 2434 | 12/15/90 | 10,000 | Marsha Goldberg | Gift |
| 2435 | 12/15/90 | 10,000 | Caren Goldberg Trust | Gift |
| 2439 | 12/15/90 | 10,000 | Jay H. Tanenbaum | Gift |
| 2440 | 12/15/90 | 10,000 | Linda G. Tanenbaum | Gift |

From December 20, 1990, through January 3, 1991, decedent wrote the following checks:

| Check Number | Date on Check | Amount | Payee | Memo Notation |
|---|---|---|---|---|
| 2312 | 12/21/90 | $       50.00 | Adam R. Roberts | Happy "B" |
| 2315 | 12/20/90 | 85.00 | Maria Falcon [maid] | Week ending Dec. 20, 1990 |
| 2316 | 12/23/90 | 1,810.00 | ABT/Metropolitan Opera | -- |
| 2319 | 12/26/90 | 8.81 | American Express | Closing date 12/11/90 |
| 2321 | 12/26/90 | 17.35 | Lenox Hill News Delivery | 11/12-12/9/90 |
| 2322 | 12/28/90 | 85.00 | Maria Falcon [maid] | Week ending Dec. 28, 1990 |
| 2323 | 12/30/90 | 76.95 | Con Edison | 11/8/90-12/12/90 |
| 2325 | 1/1/91 | 112.00 | AARP Health Insurance | January, 1991 |
| 2327 | 1/1/91 | 100.00 | Maria Falcon [maid] | Merry X-mas |
| 2328 | 1/3/90[1] | 1,000.00 | Marsha Goldberg | -- |
| 2329 | 1/3/90[1] | 1,000.00 | Linda G. Tanenbaum | -- |
| 2330 | 1/3/90[1] | 150.00 | Caren J. Goldberg | -- |
| 2331 | 1/3/90[1] | 25.00 | Steven E. Tanenbaum | -- |
| 2332 | 1/3/90[1] | 25.00 | Susan Tanenbaum | -- |
| 2333 | 1/3/90[1] | 150.00 | Andrew N. Goldberg | -- |

[1] Although dated in 1990, these checks were paid by the bank in January of 1991, and the sequence of the check numbers indicates that they were written in 1991.  Therefore, we find that these checks were written in 1991.

On January 3, 1991, decedent began feeling much weaker, and on January 4, 1991, the hospital started her on a program of chemotherapy.  Although decedent remained mentally alert, she was experiencing considerable pain and greater difficulty breathing.

From January 10 through January 15, 1991, Marsha wrote the

following checks:

| Check Number | Date on Check | Amount | Payee | Memo Notation |
|---|---|---|---|---|
| 2424 | 1/15/91 | $25,000.00 | Linda G. Tanenbaum | Reimbursement of expenses |
| 2427 | 1/10/91 | 10,000.00 | Caren Goldberg Trust Acct. | Gift |
| 2428 | 1/10/91 | 10,000.00 | Andrew Goldberg Trust | Gift |
| 2429 | 1/17/91 | 31.90 | Con Edison | -- |
| 2431 | 1/10/91 | 10,000.00 | Richard Goldberg | Gift |
| 2432 | 1/10/91 | 10,000.00 | Marsha Goldberg | Gift |
| 2436 | 1/10/91 | 10,000.00 | Susan H. Tanenbaum | Gift |
| 2437 | 1/10/91 | 10,000.00 | Jay H. Tanenbaum | Gift |
| 2438 | 1/10/91 | 10,000.00 | Linda G. Tanenbaum | Gift |
| 2441 | 1/10/91 | 10,000.00 | Steven E. Tanenbaum | Gift |
| 2442 | 1/11/91 | 74.34 | Chemical Bank Gold Master Card | -- |
| 2443 | 1/11/91 | 2.55 | Lenox Hill News | -- |
| 2444 | 1/15/91 | 25,000.00 | Marsha Goldberg | Reimbursement of expenses |
| 2445 | 1/11/91 | 16.04 | AT&T | 12/26/90 |
| 2446 | 1/11/91 | 257.93 | Mount Hebron Cemetery | -- |
| 2447 | 1/11/91 | 21.65 | Bloomingdales | -- |
| 2448 | 1/11/91 | 7.00 | The New York Times | -- |
| 2449 | 1/11/91 | 50.60 | Tower Chemists | -- |
| 2450 | 1/11/91 | 38.11 | N.Y. Telephone | -- |

On January 17, 1991, decedent's health deteriorated

significantly, and it became clear that her death was imminent.

On that date, her physician executed a form that indicated

decedent lacked the mental capacity to make medical decisions,

and Marsha executed a form that authorized decedent's physicians

to withhold resuscitation in the event of heart and/or lung

failure.  Also on that date, several family members deposited the

following six checks written by Marsha:

| Check Number | Date on Check | Date of Deposit | Date Paid | Amount | Payee |
|---|---|---|---|---|---|
| 2425 | 12/15/90 | 1/17/91 | 1/18/91 | $10,000 | Steven E. Tanenbaum |
| 2426 | 12/15/90 | 1/17/91 | 1/18/91 | 10,000 | Susan H. Tanenbaum |
| 2436 | 1/10/91 | 1/17/91 | 1/18/91 | 10,000 | Susan H. Tanenbaum |
| 2438 | 1/10/91 | 1/17/91 | 1/18/91 | 10,000 | Linda G. Tanenbaum |
| 2440 | 12/15/90 | 1/17/91 | 1/18/91 | 10,000 | Linda G. Tanenbaum |
| 2441 | 1/10/91 | 1/17/91 | 1/18/91 | 10,000 | Steven E. Tanenbaum |

Decedent went into a coma on January 18, 1991.  On that day,

family members deposited the following eight checks written by

Marsha:

| Check Number | Date on Check | Date of Deposit | Date Paid | Amount | Payee |
|---|---|---|---|---|---|
| 2427 | 1/10/91 | 1/18/91 | 1/22/91 | $10,000 | Caren Goldberg Trust Acct. |

| 2428 | 1/10/91 | 1/18/91 | 1/22/91 | 10,000 | Andrew Goldberg Trust |
|------|---------|---------|---------|--------|------------------------|
| 2430 | 12/15/90 | 1/18/91 | 1/22/91 | 10,000 | Andrew Goldberg Trust |
| 2431 | 1/10/91 | 1/18/91 | 1/22/91 | 10,000 | Richard Goldberg |
| 2432 | 1/10/91 | 1/18/91 | 1/22/91 | 10,000 | Marsha Goldberg |
| 2433 | 12/15/90 | 1/18/91 | 1/22/91 | 10,000 | Richard Goldberg |
| 2434 | 12/15/90 | 1/18/91 | 1/22/91 | 10,000 | Marsha Goldberg |
| 2435 | 12/15/90 | 1/18/91 | 1/22/91 | 10,000 | Caren Goldberg Trust |

On January 29, 1991, Jay Tanenbaum deposited two $10,000 checks.

Decedent died on January 19, 1991. Her will, which named Marsha and Linda as executrices, provided for specific bequests to Susan Tanenbaum, Steven Tanenbaum, Caren Goldberg, and Andrew Goldberg, each in the amount of $5,000. All of decedent's personal effects and the residue of her estate were to be divided equally between Marsha and Linda.

On October 15, 1991, Marsha and Linda signed the estate's estate tax return, which was postmarked October 16, 1991. They did not report the funds paid to recipients of the sixteen $10,000 checks and of the two $25,000 checks. Neither Marsha nor Linda reviewed the return or scrutinized its accuracy.

On July 11, 1994, respondent issued a notice determining an estate tax deficiency of $271,031.37. This deficiency was attributable to respondent's determination that petitioner had failed to properly include in the gross estate the value of several assets, including the value of the funds paid to recipients of the sixteen $10,000 checks and of the two $25,000 checks. Respondent also determined an accuracy-related penalty for negligence under section 6662(b)(1) in the amount of $42,763.25. Respondent determined that petitioner negligently failed to report six bank accounts with an aggregate value of

$365,798.02 and understated funds in one account by $106,941.08. Inclusion of these items resulted in a $213,816.24 increase in tax.

On September 19, 1994, petitioner filed its petition. On May 9, 1995, petitioner and respondent executed a Stipulation of Settled Issues, in which petitioner conceded several of respondent's determinations.

OPINION

Petitioner, in its petition, disputed respondent's disallowance of a $500 deduction for decedent's cleaning expenses and a $1,733 deduction for her rental expenses. It also disputed respondent's determination that one of petitioner's bank accounts had a balance of $146,644.08 instead of $39,703.00, the amount that was reported on the estate's tax return. Petitioner, however, offered no evidence at trial to refute these determinations and failed to address these issues in its briefs. Accordingly, petitioner has not satisfied its burden of proof on these items, and respondent's determinations with respect to these issues are sustained. Rule 149(b); Lowry Hosp. Assn. v. Commissioner, 66 T.C. 850, 851 (1976). We now turn to the contested issues in this case.

I. Includability of the Sixteen $10,000 Checks

We must first determine whether the value of the funds (i.e., $160,000), paid to recipients of sixteen $10,000 checks written by Marsha, is includable in the gross estate. The gross

estate includes the value of all property to the extent that the decedent had an interest in it at the time of her death.  Sec. 2033.  "The amount of cash belonging to the decedent at the date of his death, whether in his possession or in the possession of another, or deposited with a bank, is included in the decedent's gross estate."  Sec. 20.2031-5, Estate Tax Regs.  State law determines the extent of a decedent's interest in property. Burnet v. Harmel, 287 U.S. 103, 110 (1932).

Petitioner contends that decedent intended to make $10,000 gifts to family members and that the power of attorney authorized Marsha to make such gifts.  We hold that decedent did not intend to make these transfers and that Marsha had no authority to make them.

A.  Decedent's Intent To Make Gifts

We must determine, under New York law, whether the sixteen $10,000 checks that Marsha wrote to various family members were valid and completed gifts.  United States v. Rodgers, et al, 461 U.S. 677, 683 (1982); Muserlian v. Commissioner, 932 F.2d 109, 113 (2d Cir. 1991), affg. T.C. Memo. 1989-493.  According to the New York Court of Appeals, New York's highest court, a gift is valid only if donative intent, delivery, and acceptance are established.  See, e.g., Gruen v. Gruen, 496 N.E. 2d 869, 872 (1986).  "[T]he proponent of a gift has the burden of proving each of these elements by clear and convincing evidence."  Id. [citations omitted].

Petitioner offered the testimony of Richard, Linda, and Marsha to establish decedent's intent. Richard testified that he was in decedent's hospital room when she asked Marsha to make gifts to family members. Our analysis of the record as set forth below leads us to conclude that this event never occurred. Linda's testimony was vague and unconvincing. She stated that decedent intended to make gifts to family members, but could not recall whether it was Marsha or decedent that provided her with this information. Marsha's testimony, however, is the key element in our determination whether decedent intended to make these transfers.

Marsha testified that decedent kept her checkbook at the hospital and that she and decedent wrote their checks out of this checkbook. The record indicates, however, that (1) on December 12, 1990, decedent wrote checks numbered 2299, 2300, 2301, 2302, 2303, 2305, and 2306; (2) on December 15, 1990, Marsha wrote eight $10,000 checks numbered 2425, 2426, 2430, 2433, 2434, 2435, 2439, and 2440; and (3) from December 21, 1990, through January 3, 1991, decedent wrote checks with numbers ranging from 2312 to 2333. The check numbers would not be so out of sequence if they were written, as Marsha says, only days apart and out of the same checkbook.

When Marsha was asked on direct examination why the $10,000 checks dated December 15, 1990, were not deposited by her and the other donees until January, she replied that "we were all

supposed to go away for Christmas.  So the only thing I could think of is that we went away."  We do not believe that the family went on an extended vacation during the period decedent was in the hospital.  Moreover, we find it curious that all eight of the check recipients held their $10,000 checks for more than a month and that seven of the eight recipients deposited their checks during the 2-day period immediately preceding decedent's death.[1]

A further review of the facts reveals additional reasons to doubt Marsha's testimony.  On December 15, 1990, Marsha wrote eight $10,000 checks to family members.  Yet during the 2 weeks prior to December 15, 1990, decedent wrote 14 checks to family members (i.e., as birthday gifts, Chanukah gifts, etc.) in amounts ranging from $25 to $500.  During the 3-week period after December 15, 1990, decedent wrote six checks to family members in amounts ranging from $25 to $1,000.  Also during this period, she wrote a $50 birthday gift check to Adam Roberts and a $100 Christmas gift check to Maria Falcon (her maid).

Decedent undoubtedly was willing and able to write her own gift checks during this period.  The fact that she did not write any of the $10,000 checks is probative of her lack of intent.

---

[1]  A more plausible explanation is that Marsha wrote these checks in January and backdated them.  Indeed, the check numbers and Marsha's testimony would lead us to this conclusion.  The parties, however, have stipulated that the dates shown on the checks are the dates such checks were written.  Therefore, we will accept their stipulation despite our skepticism.

Marsha, however, asks us to believe that her gravely ill mother chose personally to write numerous checks of modest amounts to family members and routine checks to creditors, yet delegated to Marsha the pleasure of writing checks of large amounts to family members.  In essence, Marsha's testimony did not have "that reasonableness and probability, in view of all the circumstances, as would naturally lead to the belief that a gift had been made and intended."  In re Sherman, 125 N.E. 546, 547 (1919); cf. McKeon v. Van Slyck, 119 N.E. 851, 852 (1918); Glasberg v. Krauss, 260 N.Y.S.2d 570 (A.D. 1 Dept. 1965); 62 NY Jur. 2d Gifts sec. 5 (1987) (stating that "courts look with suspicion upon gifts alleged to have been made by a donor who is dead, and therefore unable to corroborate or deny the claim").  Therefore, we conclude that petitioner has not met its burden of establishing, by clear and convincing evidence, decedent's intent to make gifts.

   B.  Marsha's Authority Pursuant to the Power of Attorney

   We must next determine whether the power of attorney authorized Marsha to execute gifts on behalf of decedent.  We turn to the law of New York to analyze the scope of the power of attorney.  Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Estate of Casey v. Commissioner, 948 F.2d 895 (4th Cir. 1991), revg. T.C. Memo. 1989-511.

   The New York Court of Appeals has not considered whether a power of attorney may confer the authority to make gifts where

the power of attorney does not explicitly so state.  Where the highest court in the State has not ruled on a particular point, our task is to give "proper regard" to the relevant rulings of the State's lower courts in determining the law.  Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967).

In recent cases involving gifts by attorneys-in-fact to themselves and third parties, lower New York courts have consistently invalidated the transfers absent a showing that the power of attorney explicitly authorized them.  See Semmler v. Naples, 563 N.Y.S. 2d 116 (A.D. 3 Dept. 1990); Moglia v. Moglia, 533 N.Y.S. 2d 959 (A.D. 2 Dept. 1988); Matter of Griffin, 611 N.Y.S. 2d 743 (Surr. Ct. 1994); Estate of Iannone, 431 N.Y.S. 2d 904 (Surr. Ct. 1980); Estate of DeBelardino, 352 N.Y.S. 2d 858 (Surr. Ct. 1974), affd. 363 N.Y.S.2d 974 (A.D. 4 Dept. 1975); Gaughan v. Nickoloff, 214 N.Y.S.2d 487 (Sup. Ct. 1961); In re Robertson's Estate, 81 N.Y.S.2d 286 (Surr. Ct. 1948).

In Semmler, the decedent's son, acting pursuant to a power of attorney, closed all of the decedent's bank accounts prior to her death and deposited the funds in an account held jointly by himself and his sister.  The decedent's grandchildren, who were also beneficiaries under the will, brought suit to have the diverted funds declared an asset of the estate.  The Appellate Division affirmed the Supreme Court's judgment that the funds were an asset of the estate.  The Appellate Division noted that the power of attorney did not explicitly authorize gifts and held

that no valid gift was made. The court stated that "an agent may not make a gift to himself or a third party of the money or property which is the subject of the agency relationship." Semmler v. Naples, supra [citations omitted].

In Porges v. United States Mortgage and Trust Co., 96 N.E. 424, 426 (1911), the New York Court of Appeals invalidated an agent's transfer of his principal's money to himself. The court held that a power of attorney cannot be "enlarged by implication or construction" to authorize a transfer of the principal's property to the agent. Porges v. United States Mortgage and Trust Co., supra at 427 [emphasis added]. It further held that a power of attorney is to be construed:

> according to the natural meaning of the words in view of the purpose of the agency and the needs to its fulfillment. The authority within it under such construction is not to be broadened or extended and the sole right of a court is to ascertain, through the rule stated, and apply the authority. [Porges v. United States Mortgage and Trust Co., supra at 426; cf. Matter of Zalewski, 55 N.E. 2d 184, 187 (1944); 3 NY Jur. Agency and Independent Contractors sec. 66 (1979).]

Petitioner's power of attorney authorized the attorney-in-fact to "do anything he or she considers necessary and proper to conduct this business with the Bank". [Emphasis added.] "[T]his business" refers to the explicit grant of authority to open and close accounts, deposit and withdraw money, and write checks.

Applying the holdings of New York's lower courts and considering the New York Court of Appeals' holding in Porges that powers of attorney are not to be "enlarged by implication or

construction", we conclude that a New York court would invalidate the transfers in the present case. The court would apply the rule set out in <u>Semmler v. Naples</u>, <u>supra</u>, and invalidate purported gifts by the attorney-in-fact absent explicit authority in the power of attorney instrument. The power of attorney in the present case did not explicitly or implicitly authorize Marsha to make gifts of decedent's funds. Thus, no valid gifts were made and decedent retained the right to the funds. We further conclude that the New York Court of Appeals would be particularly reluctant to imply broad authority in Citibank's standard two-page fill-in-the-blanks form.

Petitioner argues that a New York court might ratify the gifts because they benefit the estate by reducing its Federal estate tax liability. It bases its argument on <u>Matter of Cohen</u>, an unreported Surrogate's Court opinion. The court stated:

> To the extent the petition seeks the ratification of various gifts amounting to sums far in excess of the annual exclusion made by the attorney-in-fact on behalf of Rose J. Cohen during the years 1985 through 1993, the relief requested is denied. The power of attorney heretofore described was executed in statutory short form and contains no expressed power for gift giving. In these circumstances, the power of attorney conferred no such authority upon the attorney-in-fact and those gifts were accordingly unauthorized and their ratification is denied (Moglia v. Moglia, 114 AD2d 347). * * * [N.Y. Law J., August 17, 1993, at 26.]

This language is subject to varying interpretations. Petitioner contends that the court in <u>Matter of Cohen</u> ratified the gifts <u>to the extent</u> they did not exceed the annual exclusion

amount. Respondent, on the other hand, contends that the court invalidated the transfers entirely. Even if we were to accept petitioner's interpretation, Matter of Cohen is distinguishable from the present case. In Matter of Cohen, the decedent for over 10 years had annually given $10,000 gifts to her children and grandchildren. Petitioner, however, has presented no evidence to demonstrate such a pattern of inter vivos transfers to family members. Therefore, we reject petitioner's argument.

Because we have found that no valid gifts were made, the value of the funds totaling $160,000 was includable in decedent's gross estate pursuant to section 2033.

## II. Includability of the Two $25,000 Checks

Respondent determined that the value of funds (i.e., $50,000), paid to recipients of two $25,000 checks, was includable in decedent's gross estate pursuant to sections 2031 and 2033. The taxpayer bears the burden of proving that respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Marsha wrote one $25,000 check to herself and one to Linda. Petitioner argues, and Marsha testified, that the checks were reimbursements for amounts Marsha and Linda expended on decedent's behalf, and alternatively, that the transfers constituted valid and complete gifts. Respondent contends that these transfers were not for reimbursement, and did not constitute valid and complete gifts. Thus, respondent argues,

decedent retained an interest in the funds, and the amounts were properly includable in the gross estate.

Petitioner has not carried its burden of proof. Although it claims that Marsha and Linda paid for decedent's hairdressers, doctors, housekeepers, doormen, moving people, and manicurists, it has not produced any records to substantiate its claim. It produced no cancelled checks or receipts. Moreover, neither Marsha nor Linda could recall whether they had actually spent $25,000 each. In fact, Linda testified that decedent intended that some of the money was to be used for future outlays. Therefore, we reject petitioner's argument and find that the transfers were not reimbursement for expenditures made on behalf of decedent.

We also reject petitioner's alternative argument that the transfers qualified as gifts. The purported gifts fail due to an absence of sufficient evidence of decedent's intent and Marsha's lack of authority to make a gift. Accordingly, we sustain respondent's determination that the value of funds (i.e., $50,000), represented by the $25,000 checks paid to Marsha and Linda, is includable in the gross estate pursuant to section 2033.

III. Accuracy-related Penalty for Negligence Under Section 6662

Respondent contends that petitioner was negligent in understating its tax liability. Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the

underpayment of tax to which the section applies.  Sec. 6662(a).
The section applies to, among other enumerated items, the portion
of an underpayment attributable to "negligence or disregard of
rules or regulations."  Sec. 6662(b)(1).

Negligence is defined as the "lack of due care or failure to
do what a reasonable and ordinarily prudent person would do under
the circumstances."  Neely v. Commissioner, 85 T.C. 934, 947
(1985) (construing the predecessor to the current section 6662).
It includes the failure to make a reasonable attempt to comply
with the Internal Revenue Code, as well as a failure by the
taxpayer to keep adequate books and records or substantiate items
properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.
Petitioner bears the burden of proving it was not negligent.
Rule 142(a); Goldman v. Commissioner, 39 F.3d 402, 406 (2d Cir.
1994), affg. T.C. Memo. 1993-480.

Petitioner failed to include in the gross estate the value
of six bank accounts.  It also undervalued an account by
$106,941.08.  Petitioner contends that "in an estate exceeding
$3.1 million, such an inadvertent omission ($388,000) * * *
do[es] not justify imposition of the addition to tax."  Section
6662, however, does not have a de minimis exception.  Therefore,
we reject this argument.

Marsha testified that she relied on her accountant to
prepare the return.  Although a taxpayer is not liable for the
negligence penalty if reasonable cause is established, a mere

showing of reliance on professional advice will not suffice. Sec. 1.6664-4(b), Income Tax Regs. In order to serve as a defense, the reliance on professional advice must be reasonable. See Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Marsha and Linda neither read nor understood the estate's tax return when they signed it. Marsha testified: "I'm just one of those people that the accountant or lawyer tells me to sign [the return], I guess I just signed it". It is well established that such blind reliance on a professional does not establish reasonable cause. See Bagur v. Commissioner, 66 T.C. 817, 823-824 (1976), remanded on other grounds 603 F.2d 491 (5th Cir. 1979); Georgiou v. Commissioner, T.C. Memo. 1995-546. Nor was it shown here that the accountant was furnished with all the information necessary to prepare the return for petitioner in an accurate fashion. Accordingly, we sustain respondent's determination.

Decision will be entered

under Rule 155.