T.C. Memo. 1997-186


UNITED STATES TAX COURT


ESTATE OF ROSA B. NEFF, DECEASED,
CHRIS HUNT, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1426-95.                    Filed April 21, 1997.


<u>Vernon D. Hyde</u>, for petitioner.

<u>Elizabeth Downs</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $61,381.  All section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The sole issue for decision is whether transfers of decedent's property shortly before her death were incomplete gifts, the value of which should be included in her estate.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, the legal residence of the executor was Keyes, Oklahoma.

Rosa B. Neff (decedent) died on September 13, 1992, at the age of 97. Decedent was a resident of Keyes, Oklahoma, most of her adult life and at the time of her death. Decedent executed her last will and testament on January 18, 1980.

A Federal estate tax return was filed on behalf of petitioner on June 9, 1993. The Federal estate tax return was signed by Chris Hunt, the estate's executor. On May 1, 1993, a Federal gift tax return for the 1992 tax year was filed on behalf of the estate by Chris Hunt.

---

[1] Petitioner claims that respondent erred in her determination that a charitable contribution to Willowbar Cemetery Association in the amount of $2,500 did not qualify as a deduction. Petitioner did not present any evidence at trial regarding this issue, nor did it argue this point on brief. We cannot be sure that petitioner intended to abandon the issue, but in any case respondent's determination with respect to this issue must be sustained as petitioner has not met its burden of proof on this matter.

The 1992 Federal gift tax return showed gifts to 19 relatives of decedent made on August 27 or 28 or September 12, 1992. These gifts included 19 separate annuities, 3 Series E bonds, and $4,000 in cash, with a total reported value of $293,249. The estate claimed nineteen $10,000 exclusions under section 2503(b), in the total amount of $190,000, resulting in a net taxable gift of $103,249. After the gifts in issue were made, the total gross estate, as reported on the estate tax return, exceeded $973,000.

Rosa Neff purchased the 19 separate annuities in 1987 from Delta Life and Annuity Co. (Delta Life). The 19 annuitants were decedent's nephews and nieces, a sister-in-law, and a former brother-in-law (Chris Hunt). On each of the annuities, decedent was listed as the owner, and the annuitant was listed as the contingent owner. The contingent owner would become the owner at the death of decedent. Jess Murphy was the selling agent on behalf of Delta Life with respect to the 19 annuities. The 19 annuities were transferred to their respective "annuitants" on or about August 27, 1992, according to the schedules attached to the Federal estate and gift tax returns. The three Series E bonds were transferred on August 28, 1992. The $4,000 in cash was transferred on September 12, 1992.

These gifts of annuities, bonds, and cash were executed by Chris Hunt, Melvin Hammontree, and Mildred Williams, who at the time jointly held a durable power of attorney on behalf of

decedent.  Mr. Hunt, Mr. Hammontree, and Ms. Williams were each recipients of one of the annuities in issue.  The durable power of attorney contained broad grants of authority which stated, inter alia:

> My attorneys-in-fact shall have all of the powers, discretions, elections, and authorities granted by statute, common law, and under any rule of court.

> \* \* \* \* \* \* \*

> My attorneys-in-fact may sell, convey, lease, exchange, mortgage, pledge, release, hypothecate, or otherwise deal with, dispose of, exchange, or encumber any of my property, either real or personal.

> \* \* \* \* \* \* \*

> My attorneys-in-fact may act in all matters with respect to all powers described herein as freely, fully, and effectively as I could or might do personally if present and of sound and disposing mind.

The power of attorney did not, however, contain an explicit grant of gift-giving authority.  Decedent executed the durable power of attorney by her own hand on July 17, 1992, and her signature was notarized.  Prior to initiating the transfer of the 19 annuities, Mr. Murphy consulted the attorney who had drafted the durable power of attorney regarding whether the attorneys in fact had the power to make the transfers under the durable power of attorney. Mr. Murphy was told that the attorneys in fact did have the power to make such transfers.

The Rosa Neff Living Trust (the trust), a revocable trust, was created on August 27, 1992, by Mr. Hunt, Mr. Hammontree, and Ms. Williams, acting as decedent's attorneys in fact.  Decedent

did not personally sign the trust documents; they were executed by her attorneys in fact on August 27, 1992. Decedent's property was distributed according to the provisions of the trust rather than the provisions of decedent's will.

During the period August 16 through September 1, 1992, decedent was hospitalized due to a fall which resulted in a broken hip. On September 1, 1992, decedent returned to her home, where she was under the care of home health care nurses and family members until her death on September 13, 1992. Decedent died of acute heart failure as a result of chronic cardiovascular hypertensive disease and bronchitis from which she had suffered for approximately 10 years. Decedent's death was not unexpected.

Rosa Neff did not file any Federal gift tax returns during the 10-year period preceding her death in 1992. The only gifts made by Rosa Neff to relatives during this 10-year period which can be shown by documents bearing her signature are checks of small amounts, with respect to which gift tax returns were not required to be filed. Decedent also made several gifts of bonds and certificates of deposit during the 10-year period preceding her death, the amounts of which did not require the filing of Federal gift tax returns. Decedent was mentally competent to manage her affairs at all times.

Decedent was concerned about retaining control of her property at the time that she was considering executing a power of attorney. Decedent was present when the power of attorney was

discussed with the attorney who drafted the document.  Decedent was capable of signing her name in spite of failing eyesight if directed where to sign.

Prior to her injury and hospitalization, decedent informed several individuals that she was considering making a gift of the 19 annuities.  Sometime during the summer of 1992, decedent told Betty Aaron, her accountant, that she was considering giving the annuities to the respective annuitants presently rather than after her death.  Decedent also talked to Mr. Murphy about the possibility of giving the annuities to the annuitants.  Prior to meeting with the attorney regarding the drafting of a durable power of attorney, decedent indicated to Chris Hunt that she wanted to give the 19 annuities to the annuitants.

Prior to her last illness, decedent cashed in two Delta Life annuities whose contingent owners had died.  These annuities are not included in the 19 in issue.  At the time that decedent cashed in the two annuities, she told Mr. Murphy that she intended to pay the taxes resulting from the transaction and give a portion of the proceeds of the annuities, in the amount of the principal or face amount of $10,000 each, to the heirs of the deceased annuitants/contingent owners.

ULTIMATE FINDING OF FACT

Decedent intended to make a present inter vivos gift of the 19 annuities in issue to the respective recipients.

OPINION

Section 2038(a)(1) provides that a decedent's gross estate includes any interest in property transferred by the decedent for less than full consideration if, at the time of the decedent's death, the transferred interest was subject to the decedent's power to revoke, alter, amend, or terminate. Section 2033 provides that the gross estate includes the value of all property to the extent that the decedent had an interest in it at the time of her death. State law determines the extent of a decedent's interest in property. Burnet v. Harmel, 287 U.S. 103, 110 (1932). We will follow the decisions of the highest State court, but in the absence of a decision by that court, we may look to the State's lower courts' rulings and holdings. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967).

Respondent contends that because the durable power of attorney did not specifically grant the attorneys in fact the authority to make gifts of decedent's property, such gifts were incomplete, invalid, or revocable by decedent and thus includable in decedent's gross estate. We disagree.

The elements of a completed gift under Oklahoma law are: (1) Intention to give, (2) complete delivery, and (3) acceptance by the donee. In re Estate of Carano, 868 P.2d 699 (Okla. 1994);

McSpadden v. Mahoney, 431 P.2d 432 (Okla. 1967).  In order to establish an inter vivos gift after the death of the alleged donor, "the evidence must be clear, explicit, and convincing in support of every element necessary to constitute a gift."  Estate of Stinchcomb v. Stinchcomb, 674 P.2d 26, 30 (Okla. 1983).  There does not seem to be any dispute that the annuities were delivered and accepted by the donees.  Thus, if petitioner can prove donative intent, the transfers will be considered to be completed gifts which are not includable in decedent's gross estate.  Respondent claims that the required donative intent cannot be supplied by a written durable power of attorney absent an express written gift authorization.  Petitioner contends that the required donative intent is present because decedent authorized her attorneys in fact to make the gifts, because decedent ratified the gifts after the transfers, and because a written durable power of attorney, even absent an express gift authorization, is adequate to allow decedent's attorneys in fact to make effective inter vivos gifts.  In order to determine whether the requisite donative intent existed, we must first look to the record as a whole to determine whether decedent possessed the requisite intent, taking into account the authority granted to decedent's attorneys in fact.  See Estate of Goldman v. Commissioner, T.C. Memo. 1996-29.

Decedent's Intent To Make Gifts

The transfers of property which are in issue in this case were executed shortly before decedent's death by decedent's attorneys in fact. Chris Hunt testified that in the summer of 1992 decedent specifically instructed him and Melvin Hammontree to transfer the annuities in question to the respective annuitants.[2] We found Mr. Hunt's testimony to be credible and supported by the record as a whole. Shortly before the gifts were made, some of decedent's nephews became sick, and they needed money. At that time, decedent decided to give all of the annuities to the annuitants. Mr. Hunt testified that after he completed the transfers and so informed decedent, she was "well pleased" that the transfers were taken care of.

The record provides additional reasons to believe Mr. Hunt's testimony. The annuities were transferred to the annuitants who had been chosen by decedent when she originally purchased the annuities. These 19 annuitants would have become the owners of their respective annuities upon the death of decedent. Jess Murphy testified that when contingent owners of two annuities not in issue predeceased decedent, it was decedent's desire that a portion of the funds from the annuities go to the heirs of the contingent owners. Mr. Murphy described decedent as "generous in

---

[2] We focus our inquiry on the annuities in question because the parties have so focused their arguments. The annuities in issue are each valued at $10,000, and that is the amount of the annual exclusions in question. If we find that the transfers of the annuities were valid inter vivos gifts, we need not discuss the validity of the other transfers presented here.

giving."  Additionally, Betty Aaron, decedent's accountant since approximately 1984, testified that decedent had talked to her in the summer of 1992 about transferring the annuities in question to the annuitants at that time rather than waiting until her death.  Mr. Murphy and Ms. Aaron were not contingent owners of any of the annuities.  Lastly, even after the transfers in question, decedent was left with over $973,000 in assets.  Cf. In re Estate of Rolater, 542 P.2d 219, 223 (Okla. Ct. App. 1975) (involving "circumstances which discourage the image of a woman capable of suddenly initiating a program aimed at divesting herself of over 80 percent of her estate by giving it to her brother").

We are cognizant that some States have a flat prohibition against attorneys in fact making gifts to themselves or to third parties absent express written authorization.  See Townsend v. United States, 889 F. Supp. 369 (D. Neb. 1995); Fender v. Fender, 329 S.E.2d 430 (S.C. 1985).  Oklahoma, however, has not adopted such a rule.  We believe that if the Oklahoma Supreme Court were to rule on this issue, it would look for "clear, explicit, and convincing" evidence of intent.  Estate of Stinchcomb v. Stinchcomb, supra at 30.  In In re Estate of Rolater, supra at 222, when presented with an issue similar to that found here, the Court of Appeals of Oklahoma found lacking any "hard evidence or cogent circumstances" that the decedent intended for her attorney in fact to make gifts.  Those circumstances, however, are not

lacking in the instant case. Given the facts and circumstances of this case, we conclude that under Oklahoma law, the transfers in question would be valid gifts. This is consistent with the way the Court of Appeals for the Fourth Circuit resolved a similar issue in Estate of Ridenour v. Commissioner, 36 F.3d 332 (4th Cir. 1994), affg. T.C. Memo. 1993-41. In that case, the court found that a durable power of attorney could impliedly include the authority to make irrevocable gifts during the principal's life if the surrounding circumstances indicated such an intent. Prior to Estate of Ridenour, the Virginia legislature passed a statute which specifically provides for an implied gift power in certain circumstances. Va. Code Ann. sec. 11-9.5 (Michie Supp. 1992). The court in Estate of Ridenour v. Commissioner, supra at 334, stated that the statute expanded and clarified the legal standard applied in Estate of Casey v. Commissioner, 948 F.2d 895 (4th Cir. 1991), revg. T.C. Memo. 1989-511. The court went on to say that Estate of Casey "stands for the proposition that to infer an implied gift power, the court must look to the intent of the person granting power of attorney." Estate of Ridenour v. Commissioner, supra at 334.

The power of attorney which decedent executed does not restrict the attorneys in fact from making gifts. The power of attorney which decedent executed authorized her attorneys in fact to "convey * * * any of my property, either real or personal." The power of attorney authorizes the attorneys in fact to "act in

all matters * * * as freely, fully, and effectively as I could or might do personally if present". This language evidences an intent to permit the attorneys in fact to make gifts of decedent's property. See Taylor v. Vernon, 652 A.2d 912 (Pa. Super. Ct. 1995) (finding similar language evidenced an intent to allow the attorney in fact to make gifts of the principal's property); cf. Whitford v. Gaskill, 480 S.E.2d 690 (N.C. 1997) (finding that the power to "transfer" real estate authorized the attorney in fact to make gifts of the property in dispute).

Respondent argues that this Court should not allow decedent's intent to make a gift or decedent's ratification of a gift to be proved by the oral testimony of interested parties; namely Mr. Hunt. Respondent points to various factors which she contends show that decedent did not intend to make present inter vivos gifts at the time of the transfers. We disagree. As we have already found, petitioner's witnesses were credible, and their testimony was supported by the record. See Diaz v. Commissioner, 58 T.C. 560 (1972) (basing analysis upon evaluation of the entire record and the credibility of witnesses); cf. Estate of Goldman v. Commissioner, T.C. Memo. 1996-29. In determining the intent of decedent, we have looked at "The facts and circumstances surrounding the parties, their relationship, and the direct expressions of the decedent". Foster v. Rose, 238 P.2d 332 (Okla. 1951). Based on the record as a whole, we conclude that decedent, acting through her attorneys in fact,

made completed inter vivos gifts of the annuities in question. Therefore, the value of the gifts is not includable in decedent's gross estate.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.