T.C. Memo. 2010-83

UNITED STATES TAX COURT

ROBERT & LINDA WHITMARSH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27480-07.                    Filed April 20, 2010.

Robert & Linda Whitmarsh, pro sese.

Kevin W. Coy, for respondent.

MEMORANDUM OPINION

COHEN, Judge:  Respondent determined a deficiency of $27,247

in petitioners' 2003 Federal income tax, and an accuracy-related

penalty of $5,449.40 under section 6662(a).  After concessions,

the issue for decision is whether petitioners are liable for the

accuracy-related penalty under section 6662(a).

All section references are to the Internal Revenue Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated under Rule 122, and the stipulated facts are incorporated as our findings by this reference. Petitioners resided in California at the time the petition was filed.

Petitioners each owned a 50-percent share in Sign Arts Products Corp. and were employees of Sign Arts Products Corp. at all relevant times.

In December 1998, Sign Arts Products Corp. enrolled in the IDP Corporate Benefit Services, Inc., Multiple Employer Welfare Benefit Plan and Trust (the IDP Plan). The IDP Plan provided life insurance to employees of enrolled employers. Sign Arts Products Corp. contributed to the IDP Plan on petitioners' behalf from 1998 until 2003. The IDP Plan used those contributions to purchase insurance on petitioners' lives from Western Reserve Life Assurance Co. of Ohio (Western Reserve). Beginning in 2002, Washington Trust Bank held the Western Reserve policies as trustee of the trust which formed part of the IDP Plan.

In December 2003, the IDP Plan distributed the Western Reserve policies to petitioners. On December 31, 2003, the IDP Plan terminated.

The Internal Revenue Service (IRS) received a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reflecting petitioners' receipt of $86,555 of income from the distribution of the Western Reserve policy insuring Mr. Whitmarsh's life.  The IRS also received a Form 1099-R reflecting petitioners' receipt of $18,683 of income from the distribution of the Western Reserve policy insuring Mrs. Whitmarsh's life.

Petitioners completed their joint Federal income tax return for 2003 on October 15, 2004, and timely filed it.  Petitioners' return was prepared and signed by an accountant.  On their Form 1040, U.S. Individual Income Tax Return, petitioners reported "Pensions and annuities" totaling $105,238, and $31,749 as the "Taxable amount".  Petitioners reported a "total tax" of $81,842. In the supplemental information petitioners filed with their return, petitioners stated the following regarding the Forms 1099-R amounts:  "These amounts should have been reported with taxable amounts [to Mr. and Mrs. Whitmarsh] of $22,182 and $9,567, respectively.  Corrected 1099Rs will be issued by the end of October 2004 with the correct taxable amounts."  The taxable amounts that petitioners listed on the return correspond to the net surrender values of the Western Reserve life insurance policies insuring petitioners as of December 10, 2003, as reported in a letter from Western Reserve dated September 16,

2004, to petitioners' insurance agent.  Washington Trust Bank later issued revised Forms 1099-R to petitioners, reporting $22,181.50 of income to Mr. Whitmarsh and $9,566.94 of income to Mrs. Whitmarsh.

Petitioners concede that the deficiency in Federal income tax determined in the notice of deficiency is correct.

## Discussion

Petitioners contest the imposition of an accuracy-related penalty under section 6662(a).  Section 6662(a) and (b)(1) and (2) imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations, or a substantial understatement of income tax.  Section 6662(d)(1)(A) defines "substantial understatement of income tax" as an amount exceeding the greater of 10 percent of the tax required to be shown on the return or $5,000.

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is proper to impose penalties.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority.  Id. at 446-447.

Petitioners' underpayment of tax is a substantial understatement of income tax. On their Form 1040, petitioners reported $81,842 as the total tax. They now concede that there was a deficiency of $27,247. The deficiency is greater than $5,000 and than 10 percent of the amount of tax required to be shown on the return. Respondent's burden of production has been met.

The accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, supra at 448. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances, including the taxpayer's experience, knowledge, and education. Sec. 1.6664-4(b)(1), Income Tax Regs. "Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Id. "A taxpayer's reliance on erroneous information reported on a Form W-2, Form 1099, or other information return indicates reasonable cause and good faith, provided the taxpayer did not know or have reason to know that the information was incorrect." Id. Reliance on professional advice may constitute reasonable cause and good faith, but only if, under all the circumstances, such reliance was reasonable.

Hansen v. Commissioner, 471 F.3d 1021, 1032 (9th Cir. 2006), affg. T.C. Memo. 2004-269; Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners could not rely on the revised Forms 1099-R simply because they believed that the initial Forms 1099-R were incorrect.  It was not reasonable for petitioners to rely on revised figures that substantially reduced their income without explanation and justification of the revision.  Although the record is unclear as to when the revised Forms 1099-R were issued, petitioners stated in the attachment to their tax return that revised Forms 1099-R would be issued "by the end of October 2004".  Absent more detailed information regarding the circumstances, we cannot conclude that petitioners acted reasonably in relying on Forms 1099-R that had not yet been issued at the time they filed their return.

Petitioners argue that they have no background in tax law, and that they relied on Western Reserve, their insurance broker, and their accountant in preparing their Federal income tax return.  They claim that "The original 1099's did show 100% taxable, but when questioned, the insurance company changed to the taxable amount that was claimed on our return."

Petitioners fail to address a number of important issues. First, they have failed to provide or identify evidence that they

reasonably relied on their insurance broker for Federal income tax advice, or that their insurance broker was a competent professional with sufficient expertise in the relevant tax laws. See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002). Second, petitioners have failed to provide evidence that they reasonably relied on their accountant's advice. They claim that their accountant relied on the revised Forms 1099-R issued by the insurance company, but those forms were neither issued by the insurance company nor in hand when the return was filed. There is no evidence of petitioners' accountant's qualifications or that petitioners provided their accountant with all the information necessary to determine the proper tax treatment of the distribution. See Neonatology Associates, P.A. v. Commissioner, supra at 99; ASAT, Inc. v. Commissioner, 108 T.C. 147, 176 (1997); Estate of Goldman v. Commissioner, T.C. Memo. 1996-29. Petitioners may not avoid liability for an accuracy-related penalty under section 6662(a) simply by showing that their Federal income tax return was prepared by someone else. See Estate of Goldman v. Commissioner, supra (citing Bagur v. Commissioner, 66 T.C. 817, 823-824 (1976), remanded on other grounds 603 F.2d 491 (5th Cir. 1979)). Third, the Forms 1099-R were issued by Washington Trust Bank, not by Western Reserve as petitioners claim, and there is no evidence that Western Reserve

provided petitioners with any tax advice.  Finally, although Washington Trust Bank did eventually provide the revised Forms 1099-R corresponding to the amount that petitioners reported on their Form 1040, petitioners have not provided any context for the revision.  Petitioners claim that Washington Trust Bank modified the Forms 1099-R "when questioned", but petitioners do not say who questioned Washington Trust Bank or what those questions were.  There is no evidence that Washington Trust Bank provided petitioners with tax advice.

The only evidence petitioners offer to prove that they relied on professional advice is the revised Forms 1099-R reported by Washington Trust Bank and petitioners' accountant's signature on petitioners' Form 1040.  Petitioners have failed to prove that they acted with reasonable cause and in good faith under section 6664.

For the reasons explained above,

<u>Decision will be entered for respondent</u>.